**AMALGAMATED SUGAR COMPANY**

v.

**UNITED STATES.**

C.D. 3361; Protest No. 65/10114–7760.

United States Customs Court,
Second Division.
March 13, 1968.

Ray, Quinney & Nebeker, Salt Lake City, Utah (John A. Dahlstrom and 'James W. Freed, Salt Lake City, Utah, of counsel) for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Bernard J. Babb and Alfred A. Taylor, Jr., New York City, trial attorneys), for defendant.

Before RAO, Chief Judge, and FORD, Judge.

FORD, Judge:

The importations involved in this protest consist of merchandise invoiced as a "Twin Amarilla Pump" and described

as a rotary displacement magma pump, together with rotors and other parts for such a pump. The merchandise was classified as pumps for liquids and parts thereof and assessed with duty at the rate of 12 per centum ad valorem under item 660.90 of the Tariff Schedules of the United States. Plaintiff claims the merchandise is entitled to free entry under the provisions of TSUS item 666.20 as machinery for use in the manufacture of sugar and parts thereof.

The tariff description, item 660.90, pursuant to which the subject merchandise was classified, appears in TSUS under schedule 6 ("Metals and Metal Products"), part 4 ("Machinery and Mechanical Equipment"), subpart A ("Boilers, Non-Electric Motors and Engines, and Other General Purpose Machinery"), and reads as follows:

> Pumps for liquids, whether or not fitted with measuring devices; liquid elevators of bucket, chain, screw, band, and similar types; all the foregoing whether operated by hand or by any kind of power unit, and parts thereof
> ....................12% ad val.

The tariff description, item 666.20, pursuant to which the subject merchandise is claimed to be classifiable, also appears in TSUS under schedule 6, part 4, but under subpart C ("Agricultural and Horticultural Machinery; Machinery for Preparing Food and Drink"), and reads as follows:

> Industrial machinery for preparing and manufacturing food or drink, and parts thereof:
> > Machinery for use in the manufacture of sugar, and parts thereof........Free

The testimonial record in this case consists of the testimony given by two witnesses for the plaintiff: Mr. Burnall S. Brown, plaintiff's vice president and general superintendent, and Mr. Sylvester M. Heiner, plaintiff's chief engineer. In major part, the testimony of these witnesses may be summarized to facilitate the presentation in this decision of the facts developed upon the trial, as follows:

There are three stages in the sugar-manufacturing process: Extraction, purification, and crystallization. The subject pump and pump parts are used in connection with the crystallization stage. At a point in the sugar-manufacturing process, prior to the involvement of the subject importations, the sugar juices become a substance called magma, or fill-mass, a combination of sugar impurities and water. The magma is pumped into crystallizing tanks, then to an affinator, where the separation of the sugar and the "mother liquid" takes place. The imported pump, installed in plaintiff's Rupert, Iowa, factory is used to pump the magma into the crystallizing tank. The imported pump parts, installed in plaintiff's factory at Nyssa, Oregon, are used to pump the magma from the affinator to a holding tank above the centrifugal machine.

Magma was described as a highly viscous material having a consistency similar to taffy. It is approximately 92 percent solid and 8 percent water. The magma is heated to 50 degrees centigrade and is warm when going through the pump. It does not flow easily nor can it be poured as syrup, but when heated, it becomes less viscous and more fluid and will flow much more readily. Mr. Brown would not call magma a liquid, but thought it would seek a level when placed in a container. Mr. Heiner defined a liquid as a fluid which seeks a uniform level when placed in a receiver.

The witnesses agreed that the pump and pump parts are necessary in the manufacture of sugar and are integral parts of the sugar-manufacturing process. Mr. Heiner stated that, to his knowledge, the pump was designed for handling magma in a sugar factory. When asked if the pump would be of any other use except as part of the sugar-manufacturing machinery, Mr. Brown replied

that his firm could not use it for any other purpose. When asked a similar question, Mr. Heiner answered that it could be used for other purposes, but it may make a poor application as a water pump or a pump for oil or syrup for the reason that there would be slippage between the rotor and the pump case. The pump would pump molasses, but, again, it would be a poor application.

■■ The law, of course, is well settled that the collector is presumed to have found every fact necessary to sustain his classification. Novelty Import Co., Inc. v. United States, 53 CCPA 28, C.A.D. 872. Underlying the classification here is the collector's finding that the subject merchandise consists of pumps, and pump parts, which are used for liquids. It is equally well settled that the burden of proof is on a protestant to show by substantial evidence not only that the collector's classification is wrong, Brown Boveri Corp., Gehrig Hoban & Co., Inc. v. United States, 53 CCPA 19, C.A.D. 870, but also to establish that the classification for which he contends is correct. Novelty Import Co., Inc. v. United States, supra.

■ With respect to the twofold evidentiary burden imposed upon plaintiff, it is to be noted that defendant concedes (at page 7 of its brief) the imported merchandise falls within the provisions for machinery for use in the manufacture of sugar. However, for reasons which will be discussed below, we do not agree with defendant's concession.

Plaintiff does not argue that the importations are not a pump and pump parts, but directs the attack against the collector's classification upon the contention that the substances which the importations are capable of pumping are not liquids. Toward that end, much of plaintiff's evidence is intended to establish that magma is not a liquid and, therefore, the merchandise was not properly classified under item 660.90 which is limited to pumps for liquids.

Accepting the validity of plaintiff's hypothesis, the first question is whether

plaintiff has established that the importations are not within the provisions for pumps and parts in item 660.90 because they do not satisfy the adjective limitation "for liquids" contained in that tariff description.

In order to resolve the question, the court may take judicial notice of certain established facts of physical science. All matter has three states of material aggregation, the solid, the liquid, and the gaseous. Antonymous to the solid state, liquids and gases are considered to be fluid substances. A fluid is defined in Webster's Third New International Dictionary 1966, as—

> a substance that alters its shape in response to any force however small, that tends to flow or conform to the outline of its container, and that includes gases and liquids and in strictly technical use certain plastic solids and mixtures of solids and liquids capable of flow.

A liquid, in turn, may be understood in accordance with the definition contained in Webster's New International Dictionary, second edition, 1956:

> liquid n. 1. A substance in the liquid state. Liquids differ from gases in being only slightly compressible, and in being incapable of indefinite expansion. They differ from solids in the ease with which their particles move upon one another, causing them to adapt themselves to the shape of the containing vessel. Some liquids are very viscous, however, no sharp line can be drawn between liquids and solids. *Liquid* and *fluid* are often used synonymously, but *fluid* has the broader signification, including both liquids and gases. [Emphasis quoted]

The essential characteristic of a pump is defined by reference to the material state of the substance upon which it has an effect. The fact that fluidity is the essence of a substance capable of being pumped is made clear by the following definitions of a pump:

> a device or machine that raises, transfers, or compresses fluids or that at-

tenuates gases esp. by suction or pressure or both. [Webster's Third New International Dictionary, 1966.]

a mechanical device for raising, circulating exhausting, or compressing a liquid or gas by drawing or pressing it through apertures and pipes. [Britannica World Language Dictionary, 1963.]

a machine to raise or move fluids. [Encyclopedia Britannica, 1947.]

More specific, inasmuch as the subject merchandise is a rotary pump, is the definition of a rotary pump contained in Webster's Third New International Dictionary, 1963:

A valveless pump in which the fluid is positively pushed by meshing vanes on parallel revolving shafts and meshing screws into the discharge pipe.

Still more specific, since the subject importation was referred to by plaintiff's witnesses as a magma pump, is the description of a magma pump contained in Audels Mechanical Dictionary, 1942:

The term *magma* includes any crude mixture, especially of organic matters in the form of a thin paste, it also means "a confection" hence, the name given to a pump belonging to a sugar house apparatus, designed for moving the various thick, heavy mixtures and semi-liquids, occurring in the process of sugar making.

It appears, therefore, that if an article is a pump, as is the subject importation, it is a pump for fluid substances, which fluid substances are either liquids or gases. The tariff descriptions for pumps contained in TSUS reflect this conclusion and distinguish, in item 660.-90, between pumps for certain fluid substances, there called liquids, and pumps for other fluid substances, including air and gas. Pumps for the latter category are specifically described by name, as fans, blowers, and compressors.

This statutory dichotomy, including such specific descriptive nomenclature, is in accord with the discussion of pumps contained in Collier's Encyclopedia, 1953, which is as follows:

Pumps, mechanical devices used to move substances possessing flow properties from one position to another (including changes in elevation), or to exhaust gases from a closed chamber so as to create and maintain a vacuum. The substance may be any fluid, such as air, water, oil, steam, or molten metal; any material that will flow, such as food products, freshly mixed concrete, or mixtures of sand and water. Pumps for compressible fluids like gas or steam are known as fans, blowers, or compressors, depending on the magnitude of the pressure rise produced.

We are not unaware of plaintiff's evidentiary attempt directly to prove that magma is not a liquid. However, we cannot conclude upon the record submitted that plaintiff's evidence is sufficiently substantial to overcome the collector's presumed finding that magma is includable as a "liquid" within the meaning of that term in item 660.90. Apart from the evidentiary inadequacies of the record, the available lexicographic authorities seem to afford more support for the collector's finding than for plaintiff's attempt to overcome such classification.

The definitions of the following words, used to describe the magma pumping operation, in Webster's Third New International Dictionary, 1966, are pertinent—

magma: 5 a mass of raw sugar and syrup obtained in sugar refining by mixing—compare massecuite

fillmass: massecuite used esp. in beet-sugar making

massecuite: a dense mass of sugar crystals mixed with mother liquor obtained by evaporation—compare magma 5

mother liquor *also* mother liquid: a residual liquid resulting from crystallization and remaining after the substances that readily or regularly crystallize have been removed

flow: 9a. the motion characteristic of gases, liquids, and viscous solids in which there is freedom of motion among constituent particles and change of form under the action of forces

viscous: 1a. having a ropy or glutinous consistency and the quality of sticking or adhering b. having the physical property of viscosity

viscosity: 1a. the quality or state of being viscous; *specif.*: the physical property of a fluid or semifluid that enables it to develop and maintain a certain amount of shearing stress dependent upon the velocity of flow and then to offer continued resistance to flow.

■ Inasmuch as the subject importation is admittedly a pump which performs a pumping operation upon the substance known as magma, causing it to flow, magma, not being a solid, must be considered as a fluid, at least for tariff purposes. This fluid, obviously and concededly not a gas, must be a liquid. Therefore, we conclude that the subject article properly is subject to classification as a pump for liquids under item 660.90.

Having concluded that plaintiff has failed to overcome the presumption of correctness attaching to the collector's classification, we need not consider whether the importations also are properly described as sugar machinery. However, because of our disagreement with defendant's concession that the subject articles are within the provision for sugar machinery but are more specifically provided for as classified, it would not be inappropriate to set forth the reasons.

■■ The rights of the parties to agree upon ultimate facts or essential elements required to be established in customs litigation is well recognized by Federal courts. H. S. Dorf & Co., Inc., a/c Joseph H. Meyer Bros. v. United States, 41 CCPA 183, C.A.D. 548. However, the subject concession, comparable to a stipulation, is essentially one of law rather than of fact. It usurps the judicial function of the court in attempting to concede upon a question of law, and is, of course, not binding upon the court. Julius Forstmann & Co. v. United States, 26 CCPA 336, C.A.D. 37. Accordingly, the concession of defendant in the brief is not binding upon the court.

The disagreement is predicated upon the legislative directive contained in the following headnote to subpart A of part 4, schedule 6:

1. A machine or appliance which is described in this subpart [subpart A] and also is described elsewhere in this part [part 4] is classifiable in this subpart.

The proper application of this headnote is of fundamental importance to this case because the tariff description for pumps for liquids, item 660.90, is within subpart A, while the tariff description for sugar machinery, item 666.20, is elsewhere within part 4.

■ To assist in the interpretation of the headnote, which is not entirely free of ambiguity, resort may be made to legislative history to determine congressional intent. The legislative history of TSUS has been held to include the "Tariff Classification Study" and the Supplemental Reports of the United States Tariff Commission published prior to the enactment of TSUS, Rifken Textiles Corp. v. United States, 54 CCPA, C.A.D. 925, and the "Nomenclature for the Classification of Goods in Customs Tariffs", usually referred to as the "Brussels Nomenclature", F. L. Smidth & Company v. United States, 59 Cust.Ct., C.D. 3141, 273 F.Supp. 384.

In the explanatory notes to subpart A contained in the Tariff Classification Study, dated November 15, 1960, there are included the following paragraphs:

This subpart covers a wide variety of machinery and appliances which can be used in numerous industrial applications. As set forth in headnote 1 to this subpart, any machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart. The

systematic grouping of general-purpose machines and appliances in this subpart, together with the rule expressed in the headnote, would provide greater stability to the product classifications.

\*     \*     \*     \*     \*

Item 660.90 covers most machines and appliances for raising or otherwise continuously displacing volumes of liquids, whether they are operated by hand or by any kind of power unit, integral or otherwise. This item includes pumps equipped with measuring or price-calculating mechanisms such as are used in filling stations or garages and also pumps used with other machines, vehicles, etc. The products in question are presently classified at various rates under a number of provisions in paragraphs 353, 360, 369, 370, and 372. The proposed rate (15 percent ad valorem) is an estimated weighted average.

The TSUS tariff descriptions involved in this case, as well as the subpart headnote now being examined, are significantly similar to comparable provisions in the Brussels Nomenclature.

Pumps for liquids are there provided for in heading 84.10 which is as follows:

Pumps (including motor pumps and turbo pumps) for liquids, whether or not fitted with measuring devices; liquid elevators of bucket, chain, screw, band and similar kinds.

Sugar-manufacturing machinery is provided for in heading 84.30 which is as follows:

Machinery, not falling within any other heading of this Chapter, of a kind used in the following food or drink industries: bakery, confectionery, chocolate manufacture, macaroni, ravioli or similar cereal food manufacture, the preparation of meat, fish, fruit or vegetables (including mincing or slicing machines), sugar manufacture or brewing.

Headnote 1 to subpart A, referred to above, has its apparent counterpart in the Brussels Nomenclature at note 2 to chapter 84 which provides:

Subject to the operation of Notes 5 and 6 to Section XVI, a machine or appliance which answers to a description in one or more of the headings Nos. 84.01 to 84.21 and at the same time to a description in one or other of the headings Nos. 84.22 to 84.60, is to be classified under the former heading and not the latter.

This chapter note 2 is explained in the Explanatory Notes to the Brussels Nomenclature, volume III, page 771, as follows:

The first twenty-one headings of the Chapter cover machinery and apparatus (described generally by reference to their function), which can be used in various branches of industry; in the other headings the machinery or apparatus is described, in most cases, by reference to the industry or other field of activity in which they are used. Under Chapter Note 2, machinery or apparatus falling within two or more headings one of which is within the first group (i. e., the first twenty-one headings) is classified in that heading of the first group. Thus motors are always classified in headings 84.05 to 84.08 without regard to their use; the same principle of classification applies for pumps, even if specialized for a particular purpose (e. g., textile spinning pumps or agricultural pumps), centrifuges, calenders, filter presses, furnaces, steam generators, etc.

It is clear that a pump was intended to be included, to use the quoted language taken from the Explanatory Notes to TSUS and the Brussels Nomenclature, within the categories of "machinery and appliances which can be used in numerous industrial applications" or "machinery and apparatus which can be used in various branches of industry". Such inclusion prevails notwithstanding the fact that a particular pump would otherwise be classifiable as machinery for a particular industry by reason of the fact that the pump is specialized for use in such

particular industrial application. In other words, a pump which, in common tariff parlance, is specially designed for a particular purpose is, nonetheless, to be classified as a pump under TSUS.

A pump which can be used for various purposes may well be considered a multipurpose machine. So considered, the classification of a pump would be affected by another legislative directive contained in headnote 2 to part 4 of schedule 6, which provides:

2. Unless the context requires otherwise, and *subject to headnote 1 to subpart A of this part*, a multi-purpose machine is classifiable according to its principal purpose, but if such a machine is not described in a superior tariff heading as to its principal purpose, or if it has no one principal purpose, it is classifiable in subpart H of this part as a machine not specially provided for. [Emphasis supplied.]

This headnote has its counterpart in the Brussels Nomenclature at note 4 to chapter 84 which provides:

A machine which is used for more than one purpose is, for the purposes of classification, to be treated as if its principal purpose were its sole purpose.

Subject to Note 2 to this Chapter and Note 5 to Section XVI, a machine whose principal purpose is not described in any heading or for which no one purpose is the principal purpose is, unless the context otherwise requires, to be classified in heading No. 84.59. * * *

The quoted language is explained in the Explanatory Notes to the Brussels Nomenclature, volume III, page 768, as follows:

In general, multi-purpose machines are classified according to the main purpose or main function of the machine.

*  *  *  *  *

This principle does *not*, however, apply if the composite machine or apparatus is covered as such by a *particular* heading of the Section, for example,

motor pumps and motor compressors (heading 84.11), air conditioning machines (heading 84.12), refrigerating plant (heading 84.15) and radio-gramophones (heading 85.15).

It appears, therefore, that a pump, if considered to be a multipurpose machine, is to be classified as a pump even though its "principal purpose" might otherwise result in its classification as a machine for a particular industrial application. In other words, again in common tariff parlance, the fact that a pump is chiefly used for a particular purpose does not remove it from classification as a pump under TSUS.

■ The effect of the TSUS headnotes quoted above as applied to this case is that the subject importations are classifiable as pumps for liquids and parts thereof even if they were specially designed and chiefly used as machinery for the manufacture of sugar. However, it should not be inferred that the evidentiary burdens of proving chief use and specific design have been established satisfactorily. We hold only that these considerations, even had they been proven, would not be sufficient to remove the subject importations from classification under item 660.90. It is for the foregoing reasons that we do not agree that the subject articles, as conceded by defendant, are within the provision for sugar machinery.

The conclusion expressed in the preceding paragraph should not be construed as an application of the rule of relative specificity. Rather, the effect of the cited headnote to subpart A may be compared to the effect of phrases, contained in earlier tariff statutes, such as: "whether or not more specifically provided for elsewhere"; "by whatever name known"; or "whether or not provided for elsewhere". See e. g., Kayser & Co. (Inc.) v. United States, 13 Ct.Cust. Appls. 474, T.D. 41367; Western Cartridge Co. etc. v. E. I. DuPont de Nemours & Co. (Inc.), etc., 16 Ct.Cust. Appls. 229, T.D. 42839; Madame Adele v. United States, 23 Ct.Cust.Appls. 305,

T.D. 48176; Richard Crittall Radiant Heating Corp. v. United States, 27 Cust. Ct. 193, C.D. 1369; Swiss Manufactures Association, Inc. et al. v. United States, 39 Cust.Ct. 227, C.D. 1933. For, if an article is described in a subpart A tariff description, the headnote to subpart A eliminates relative specificity from consideration and requires that the article be assessed as there provided.

The headnote contains language of an "'invading character'", similar to the quoted phrases, indicating a congressional intent to give precedence in classification to an article described in subpart A. Accordingly, subpart A invades every other subpart of part 4 and removes therefrom articles described therein which also are described in subpart A. The subpart A headnote may be compared with the proviso to paragraph 1504 of the 1922 Act and paragraph 1604 of the 1930 Act which limited the inclusiveness of those paragraphs to articles not specified by name in the dutiable list. When a particular importation was so specified by name, it was not classifiable as an agricultural implement nor as sugar machinery even if exclusively used and specially designed for such restricted purposes. United States v. Sheepshearers Mdse. & Comm. Co., 20 Ct.Cust.Appls. 327, T.D. 46112; United States v. J. A. Freeman & Son, 29 C.C.P.A. 103, C.A.D. 177; Enrique Abarca and U. Casal et al. v. United States, 18 Ct.Cust.Appls. 370, T.D. 44617.

In the *Sheepshearers* case, combs and cutters for a sheepshearing machine, classified as "blades for animal clippers" under paragraph 357 of the Tariff Act of 1922, were claimed to be classifiable as agricultural implements. Finding the importations were within the common meaning of the term "blades for animal clippers" and, as such, were specified by name in the dutiable list, the court held that, by reason of the proviso to paragraph 1504, the articles were dutiable as classified although they were exclusively used for shearing sheep.

The *J. A. Freeman & Son* case involved, among other importations, the classification of a chain used as part of an agricultural mower. The court, assuming that the chain could be used only on an agricultural mower, held that it was, nevertheless, a chain "used for the transmission of power" as specified by name in paragraph 329 of the Tariff Act of 1930 and, by reason of the proviso to paragraph 1604, was excluded from classification as an agricultural implement.

In the *Enrique Abarca* case, the articles in question were steam engines and were classified as such under paragraph 372 of the Tariff Act of 1922. The importer claimed the steam engines were classifiable as machinery for use in the manufacture of sugar under paragraph 1504 of that act which contained a proviso identical with that contained in paragraph 1604 of the Tariff Act of 1930. The steam engines apparently were specially designed for use in sugar mills and some modifications may have been required to fit them for use in other industries.

In affirming the decision of the Customs Court overruling the protest, the appellate court said:

Steam engines are specified by name in Title I (the dutiable list) of the act, and the proviso to paragraph 1504, quoted, supra, in the excerpt from the Customs Court's opinion, expressly forbids their being classified under said paragraph, unless we could say that being steam engines of a special type renders them, for tariff purposes, not steam engines but something else. Such a holding would be extremely fantastic under the statute as worded.

As applied to this case, these decisions stand for the classification principle that an importation provided for by name is not removed from classification as so named merely because it is a special type of the named article. The fact that the subject importations may be a special type of pump for liquids does not render them, for tariff purposes, something other than pumps for liquids as provided for in subpart A.

Parenthetically, it should be noted that. while the existence of the proviso to par-

agraph 1504 of the Tariff Act of 1922 and to paragraph 1604 of the 1930 Act was an important consideration in the cited cases, the absence of such a proviso would not necessarily prohibit the application of the tariff classification principle which underlies those decisions. For example, in United States v. Carl Zeiss, Inc., 27 CCPA 12, C.A.D. 54, cameras, used solely for the purpose of photographing the retina of the eye and which could not be used for any other purpose, were classified as "testing or recording instruments for ophthalmological purposes" under paragraph 228(a) of the Tariff Act of 1930, and were claimed to be classifiable as "Photographic cameras and parts thereof" under paragraph 1551 of the act. In holding the articles to be properly classifiable under paragraph 1551, the appellate court said:

> The involved cameras are used for no purpose other than the taking of photographs, and the mere fact that they are used exclusively to photograph a particular object for a special purpose does not change their status as photographic cameras. * * *

In this case, the involved pumps are used for no purpose other than pumping, and the mere fact that they may be used exclusively to pump a particular liquid substance does not change their status as pumps for liquids.

For the reasons expressed above, we conclude that the subpart A headnote expressly prohibits the classification of the pumps and pump parts in issue from being classified as sugar machinery. For, notwithstanding the claim, the evidentiary support for which we do not pass upon, that the subject pumps are specially designed for and have no other use than as sugar machinery, they are nonetheless pumps for liquids. As such, they are described in subpart A and, therefore, by reason of the headnote, precluded from classification as sugar machinery.

Therefore, the protest is overruled and judgment will issue accordingly.

RAO, Chief Judge, concurs.