(C.D. 3831)

NORBERT STRYER v. UNITED STATES

United States Customs Court, Second Division

(Decided May 26, 1969)

*E. Thomas Honey* for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Arthur H. Steinberg* and *Herbert P. Larsen*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise involved in this case, imported from Italy and entered at the port of New York, is described on the invoice as "Weaver's Tools". It was assessed with duty at 22.5 per centum ad valorem and 10 cents each under item 650.91 of the Tariff Schedules of the United States, under the provision for scissors and shears valued over $1.75 per dozen. It is claimed that the articles are properly dutiable under item 657.20 at 19 per centum ad valorem, as articles of iron or steel not coated or plated with precious metal.

The pertinent provisions of the tariff schedules are as follows:

> Scissors and shears (except machines and except shears provided for in any of the foregoing provisions), * * *:
>
> \* \* \* \* \* \* \*

| | | |
|---|---|---|
| 650.91 | Valued over $1.75 per dozen_____ | 10¢ each and 22.5% ad val. |

> Subpart G headnotes:
>
> 1. This subpart covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules.
>
> \* \* \* \* \* \* \*
>
> Articles of iron or steel, not coated or plated with precious metal:
>
> \* \* \* \* \* \* \*
>
> Other articles:
>
>          \* \* \* \* \* \* \*

| | | |
|---|---|---|
| 657.20 | Other _____ | 19% ad val. |

Two samples of the merchandise were received in evidence. (Exhibits 1 and 6.) One was sent to the customs laboratory for analysis and was reported to be composed of nickel plated iron or steel. (Exhibit 5.) Each sample is composed of two metal strips about 4½ inches long, each consisting of a blade and a shank or handle. The strips are joined at the shank end by a screw and nut. One of the pieces has a finger ring as a part of the shank or handle. The article has a self-opening blade spring and a stop pin which keeps the points in alignment.

Three witnesses were called at the trial. The plaintiff, Norbert Stryer, who has been in the business of importing and selling cutlery all over the United States for 20 years, testified on his own behalf. Bruce Briggs, product manager, and Walter Selk, regional sales manager of J. Wiss & Sons Co., manufacturers of shears, scissors, garden tools and snips, which are sold throughout the world, testified for the defendant.

According to these witnesses and the illustrations on exhibits 1 and A, the imported article, or its domestic counterpart, is used by inserting the third or fourth finger of the hand in the ring and pressing the blades with the thumb and forefinger. The ring is a feature which enables a worker on the production line to retain the tool in the hand. The spring causes the blades to reopen, thus reducing hand and finger fatigue. The article is used to cut or clip thread, fibers and filaments. In the garment industry, it is also used to cut darts and binding tape, and to separate various parts of patterns. In the shoe industry, it is used to clean threads off and to cut canvas. It is employed in the electronic industry for cutting light filament and jackets of wire. In the plastics industry it is used to trim off excess material, as the material comes out of the mold.

Mr. Stryer testified that he sold the imported merchandise as thread clips or nippers. He said they were cutting instruments but not scissors. A comparable article, designated the "Wiss-clip" by its manufacturer, J. Wiss & Sons Co. (exhibit A), is called a thread clip in its literature (exhibits 2 and B). Mr. Briggs called it a thread clip scissor and stated that it was regarded in the trade as a type of scissors. He testified that the designation "Wiss-clip" was given to indicate quickness and ease of use and was a shortened version of the term "thread clip scissor" as known in the trade. He said such articles had been manufactured both in the United States and abroad for a great many years, but that it was a relatively new product with his firm, which had made improvements and packaged it for the retail trade. Mr. Selk testified that the article is bought and sold as a thread clip. He said such articles are stocked with scissors and shears, and are sold along with them for the very same function. He stated they are simply another of the many types of scissors and shears that are available.

Mr. Stryer testified that scissors have as characteristic features two blades, shanks, a screw that fastens the two blades together, handles, and two rings for the insertion of fingers. When open, the blades form an "X". The article is manipulated by putting the fingers into the rings and closing the blades on the object to be cut. While the thread clip has two blades, it has only one ring and the function of the ring is quite different, being used as a finger rest. It has a spring which is

essential to its function and without which it would be a "dead" instrument.

Mr. Briggs testified that he was familiar with various types of scissors, including sewing, embroidery, buttonhole, pocket, tailors' points, and thread clips. All of them have handles, the handle being the part of the tool that is held when it is being used. He said that a handle and shank are basically the same because the shank is used in conjunction with or as a handle. In the trade, a scissor is understood to be a light duty instrument, as compared to a shear, and is usually less than 6 inches in length.

Mr. Briggs pointed out that the scissors or shears in evidence as exhibits 3 and 4 each have two blades which when open form a "V", and that the blades of the thread clip (exhibit 6) also form a "V". He said the blades of all three exhibits are pivoted and face each other. Exhibits 3 and 4 do not have return springs but exhibit 6 does. According to the witness, the spring is necessary to the thread clip to make it functional for the purpose for which it was intended. He stated, however, that there are other products which utilize a spring for self-opening, such as grass shears, pruning shears, snips, cuticle nippers, and cutting pliers. He pointed out in exhibit B, an illustration of an electronic filament scissor which does not have rings but has a spring, a flower shear which does not have rings but utilizes a spring, grass shears and pruning shears which have self-opening springs. The function of the spring in these items is to return the blades to an open position, thus reducing the effort of the operator.

Mr. Briggs testified that it was necessary to put the fingers in the rings to operate shears of the length of exhibits 3 and 4, but he said that many people palm a scissor and do not use the rings to operate it. He explained that operators on the production line develop a certain amount of dexterity and increase their productivity by devising ways of using a tool other than the normal manner. Mr. Selk testified that in the garment industry, on the production line, some girls will use thread clips, some embroidery scissors, and some straight trimmers. When scissors and trimmers are used, they loosen the pivot and hold the instrument in the palm of the hand. Half of the operators he has seen used scissors and shears as against thread clips.

The first issue before the court is whether the articles designated as thread clips were properly classified as scissors under item 650.91 of the Tariff Schedules of the United States. Since the collector has so classified them, it is presumed that he found all the facts necessary to support that classification. *F.H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798 (1962). Thus, the burden rests upon plaintiff to establish that the merchandise is not scissors within the meaning of the tariff schedules. *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966).

Tariff statutes are drafted in the language of commerce, presumptively that in common use, and words used in such statutes are to be taken in their commonly received and popular sense, unless a commercial designation is established. *Hummel Chemical Co.* v. *United States*, 29 CCPA 178, 183, C.A.D. 189 (1941). Common meaning is a matter of law to be determined by the court, for which purpose the court may consult dictionaries and other authorities, may receive the testimony of witnesses, which is advisory only, and may rely upon its own knowledge. *United States* v. *Victoria Gin Co., Inc., et al.*, 48 CCPA 33, C.A.D. 759 (1960).

The word "scissors" has been defined in various dictionaries as follows:

Webster's New International Dictionary (1934 edition) :

scissors * * * 1. A cutting instrument working like shears but smaller, consisting of two cutting blades with handles, movable on a pin in the center, by which they are held together ; * * *.

Funk & Wagnalls New Standard Dictionary (1956 edition) :

scissors * * * 1. A cutting implement consisting of a pair of blades with handles, and pivoted face to face, so that the opposed edges may be brought together on the object to be cut.

Webster's Third New International Dictionary (1966 edition) :

scissors * * * 1. a cutting instrument consisting of two beveled-edged cutting blades with handles that are movable past one another on a pivot in the center by which they are held together * * *

The Encyclopedia Americana, vol. 8, p. 340 ;

* * * Scissors consist of two cutting blades which operate on a pivot hinge and have one bow for the user's thumb and the other for one finger, whereas shears have a thumb bow and another large enough for two or more fingers. * * *

The American College Dictionary (Random House) :

scissors 1. a cutting instrument consisting of two blades (with handles) so pivoted together that their edges work against each other (often called a *pair of scissors*).

The Winston Simplified Dictionary (1936) :

scissors * * * a cutting instrument smaller than shears, having two opposite sharp-edged blades which slide over each other as the scissors close : frequently called a *pair of scissors.* * * *

The Pocket Oxford Dictionary (1927) :

scissors cutting instrument of two blades so pivoted that the edges slide over each other.

The thread clips before the court consist of two cutting blades which are held together by a pivot and which move past each other to perform the cutting operation. However, they differ somewhat from the

description of scissors in some of the above definitions in construction and manner of use. They do not have handles ending in rings for thumb and finger, nor is the pivot in the center of the instrument. They are activated by the fingers, but in a different manner than ordinary scissors. According to the record, they are used for the same purposes as some types of scissors.

While the record indicates that they are sold as thread clips, one witness called them thread clip scissors and they are listed in the domestic manufacturer's catalogue with a large variety of scissors and shears. In the leaflet received in evidence as illustrative exhibit 2, it is stated: "Wiss Thread Clips will increase productivity, reduce costs, and improve quality because they can cut faster and are easier to handle than *conventional scissors*." [Emphasis supplied.]

It was plaintiff's opinion that these thread clips are not scissors, but in the view of defendant's witnesses, they are a type of scissors. It is clear that they are not ordinary or conventional scissors, but they bear a close resemblance to such scissors, especially in use. Use has been held an important factor in determining the identity of an article. *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699 (1959). It is also well settled that an *eo nomine* classification, without limitation or shown contrary legislative intent, judicial decision, or administrative practice, and without proof of commercial designation, includes all forms of the article. *United States* v. *Madison Import Corp.*, 49 CCPA 49, C.A.D. 795 (1962).

In *United States* v. *National Carloading Corp. et al.*, 48 CCPA 70, C.A.D. 767 (1961), it was held that steel tools having nail pulling claws and a hammering face portion were a form of crowbar and classifiable as such. The court quoted as follows from the decision of the trial court (p. 74) :

> * * * We find, in the cited definitions, two attributes in particular which are common to all crowbars. These are that a crowbar is a bar of iron or steel and that it is used primarily as a lever or pry. It is not disputed that the instant tool is a bar of iron or steel and that it is used primarily to pry open packing cases and the like. Since other characteristics of a crowbar may vary, and it may be "more or less" bent, wedge-shaped, claw-shaped, or pointed, and weight and size are not material factors, we do not consider as detracting from this conclusion that one end of the subject article is bent at right angles to the bar, or that both ends are wedge-shaped and clawed, or that it is less than 24 inches in length, or that it is relatively light in weight. In respects which are essential to its fitting the description of a crowbar, it is not found wanting.

In the instant case, all of the definitions we have examined mention as attributes of scissors that they have two blades pivoted face to face so that they move past each other. Some definitions also include

handles with rings as a feature and state that the two parts are joined at the center. We conclude that the essential working characteristics of scissors are the two blades so pivoted that they move against each other in order to cut material placed between them. That "scissors action" distinguishes scissors from other types of cutting instruments. Since the involved thread clips have these essential characteristics and are used for the same purposes as scissors, we find that they fall within the meaning of the term "scissors".

We are supported in our view by the legislative history of the Tariff Schedules of the United States, which includes the Tariff Classification Study of November 15, 1960, the Supplemental Reports thereto, and the "Nomenclature for the Classification of Goods in Customs Tariffs" usually referred to as the "Brussels Nomenclature", *Rifkin Textiles Corp.* v. *United States*, 54 CCPA 138, C.A.D. 925 (1967); *F.L. Smidth & Company* v. *United States*, 59 Cust. Ct. 276, C.D. 3141, 273 F. Supp. 384 (1967), affirmed 56 CCPA —, C.A.D. 958 (1969); *Pitney-Bowes, Inc.* v. *United States*, 59 Cust. Ct. 181, C.D. 3116, 273 F. Supp. 403 (1967) (appeal dismissed 55 CCPA 115); *Amalgamated Sugar Company* v. *United States*, 60 Cust. Ct. 268, C.D. 3361, 281 F. Supp. 373 (1968).

The Tariff Classification Study contains no definition of the term "scissors". The Brussels Nomenclature, according to the Tariff Classification Study Submitting Report, exerted the greatest influence in the preparation of the tariff schedules. The explanatory notes under section 82.12 thereof contain the following (vol. 2, p. 750):

> The scissors classified in this heading consist of two super-imposed steel blades, sometimes serrated, articulated on a screw or pin near the centre. In general the heading covers *only* those scissors in which each blade is fitted, at one end, with a finger ring. The blades may be in one piece, or consist of jointed cutting blades and handles. The heading also includes certain types of scissors hinged at one end with a single finger ring (used mainly in the textile industry).

The last sentence squarely covers the merchandise involved herein.

Note also the following from the 1968 Summaries of Trade and Tariff Information, Prepared in Terms of the Tariff Schedules of the United States (TSUS) (vol. 6, schedule 6, p. 219):

> Scissors and shears are made of two bevel-edged blades usually riveted together so that the blades close on each other in adjoining parallel planes and cut the material placed between them. * * *

> There is no precise trade distinction between scissors and shears. Usually the term "scissors" is applied to the lighter weight patterns not more than 6 inches long which have equal-sized finger grips (called bows) that are circular or slightly

oval in shape. The term "shears," on the other hand, is usually applied to the heavier and longer patterns, which usually have one large oval-shaped and one smaller circular or slightly oval-shaped bow.

There are more than 150 distinctive patterns of scissors and shears of various types and sizes.* * *

This descriptive material indicates that the essential characteristics of scissors are the blades which are riveted together so that they close on each other in order to cut material and that the handles and rings are usual but not essential. It also points out that there is a large variety of scissors and shears.

The legislative history is evidence of a congressional intent to include not only conventional scissors, but all types and kinds, even though they may lack some features of ordinary scissors.

We conclude that the thread clips before us have the essential cutting feature characteristic of scissors; that the legislative history indicates a congressional intent to cover all varieties of scissors, including articles such as these thread clips, and that the record shows that thread clips are regarded by two witnesses with extensive trade experience as a type of scissors, and are used for the same purposes. Accordingly, we hold that the articles are a type of scissors and were properly classified as such under item 650.91 of the Tariff Schedules of the United States.

In addition, it is appropriate to point out that even if these thread clips were not held to be scissors, the claimed classification under item 657.20 as articles of iron or steel, other, could not be sustained since there are more specific classifications under which thread clips would properly fall. The superior heading to items 651.21–651.55 covers "Hand tools (including table, kitchen, and household implements of the character of hand tools) not specially provided for, and metal parts thereof." Thread clips are obviously hand tools and would, therefore, be classifiable under one of the items under said superior heading.

For the reasons stated, the protest is overruled and judgment will be entered for the defendant.