(C.D. 4200)

GEORGIA-PACIFIC CORP.
ROBERT E. LANDWEER & Co. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 14, 1971)

*Glad & Tuttle* (*George Tuttle* and *Hudson F. Edwards* of counsel) for the plaintiffs.

*L. Patrick Gray, III*, Assistant Attorney General (*H. Peter Larsen* and *Susan C. Cassell*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: This case brings before the court for determination the proper classification of disassembled parts of a presteamer, impregnator, and a digester. All of these units are used in a pulp mill for the conversion of wood chips to pulp. They were assessed with duty at the rate of 12.5 per centum ad valorem under item 661.70, Tariff Schedules of the United States, which provides for industrial ma-

chinery for the treatment of materials by a process involving a change of temperature and parts thereof.

Plaintiffs contend the merchandise at bar is properly subject to classification under item 668.06, Tariff Schedules of the United States, which provides for parts of machines for making cellulosic pulp, paper or paperboard and prescribes the rate of 7 per centum ad valorem.

The pertinent portions of the statutory provisions involved herein provide as follows:

Schedule 6, Part 4:

SUBPART A. – BOILERS, NON-ELECTRIC MOTORS AND ENGINES, AND OTHER GENERAL PURPOSE MACHINERY

Subpart A headnote:

1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

\* \* \* \* \* \* \*

Industrial machinery, plant, and similar laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; instantaneous or storage water heaters, non-electrical; all the foregoing (except agricultural implements, sugar machinery, and machinery or equipment for the heat-treatment of textile yarns, fabrics, or made-up textile articles) and parts thereof:

\* \* \* \* \* \* \*

661.70    Others _____ 12.5% ad val.

\* \* \* \* \* \* \*

SUBPART D. – PULP AND PAPER MACHINERY; BOOKBINDING MACHINERY; PRINTING MACHINERY

Machines for making cellulosic pulp, paper, or paperboard; machines for processing or finishing pulp, paper, or paperboard, or making them up into articles:

\* \* \* \* \* \* \*

Parts of the foregoing machines:

\* \* \* \* \* \* \*

Other:

668.06    Parts of machines for making cellulosic pulp, paper or paperboard__    7% ad val.

The record consists of three exhibits, all drawings, received in evidence as plaintiffs' exhibits 1–3 and the testimony of Edwin Dahlgren, technical director of the Bellingham Division of plaintiff corporation. This well qualified witness testified he was familiar with the imported equipment having been involved in development work on it. The function of the equipment was to produce a bright pulp which is used as a filler in the production of tissue products.

The function of the presteamer is to raise the temperature of the chips from approximately 10° centigrade to approximately 95° centigrade. The chips are retained in the presteamer at this temperature for an adequate period of time within which the chips are softened. After this, the chips are fed into the impregnator by means of the screw feeder which removes a large portion of the water from the chips. The impregnator is a large elongated vessel which contains a cooking liquor which is composed of sodium carbonate and sodium sulfide with a pH of 6.5 and a concentration equivalent to 100 grams per liter of sulfur dioxide. The temperature of the chips entering the impregnator is the same as that of the presteamer, 95° centigrade. The temperature is increased in the impregnator to 160° centigrade. The chips are contained in the impregnator about five minutes and two changes occur during this time. First the chips absorb the cooking liquor and second the temperature is increased from 95° centigrade to 160° centigrade. Chemically the cooking liquor serves as a reduction agent. The temperature change produces a number of reactions, the primary one being the dissolution of the lignin, which binds the cellulosic fibers in the wood.

The chips then pass to the digester and are maintained at the 160° centigrade temperature for 30 minutes. The product is then discharged from the bottom of the digester.

Based upon the record it is evident the imported merchandise is used for the manufacture of cellulosic pulp as prescribed in item 668.06, *supra*. By the same token, it is also apparent that the presteamer increases the temperature to 95° centigrade which softens the chips. The impregnator then increases the temperature to 160° centigrade which permits the absorption of the cooking liquor, which brightens the pulp, and also tends to dissolve the lignin which binds the cellulosic fiber in the wood. The digester maintains the 160° centigrade temperature to assist in the process. All of these items, therefore, also treat material by a process involving temperature change as prescribed in item 661.70, *supra*.

Plaintiffs contend specifically that the impregnator's primary function is to impregnate the chips with the cooking liquor and that the

change in temperature is a secondary function designed merely to provide the temperature necessary for the digester. We note, however, that the temperature also dissolves the lignin binding the cellulosic fibers in the wood and the temperature assists in the absorption of the cooking liquor. These functions are coordinate and not primary or secondary. We are aware that the legislative history indicates the merchandise intended to be covered by item 661.70, *supra*, covers only those articles in which the treatment by temperature change is the primary function. *Tariff Classification Study, Schedule 6*, page 263. As indicated, *supra*, insofar as the impregnator is concerned, these functions are coordinate.

The primary function of both the presteamer and the digester is the treatment of material by a temperature change. Plaintiffs, however, contend these items are only parts and therefore, the headnote contained in subpart A, part 4, schedule 6, is not controlling since it contains no provision for parts.

This matter has recently been disposed of in the case of *Costa International Corp.* v. *United States*, 58 CCPA 48, C.A.D. 1003 (1970). See also *Jagenberg U.S.A., Inc.* v. *United States*, 66 Cust. Ct. 247, C.D. 4198 (1971); *American SF Products, Inc.* v. *United States*, 61 Cust. Ct. 257, C.D. 3593, 291 F. Supp. 685 (1968); *Amalgamated Sugar Company* v. *United States*, 60 Cust. Ct. 268, C.D. 3361, 281 F. Supp. 373 (1968).

In the *Costa* case, *supra*, the court in considering the scope of this headnote made the following observation:

> * * * The term "machine or appliance" appears in the headnote, *not in item 661.70*. The question therefore is not whether parts of a "machine or appliance" are classifiable under item 661.70. Instead, it is whether the "parts thereof", which item 661.70 includes along with the specified "industrial machinery, plant and similar laboratory equipment", are precluded from constituting, in the words of the headnote, "a machine or appliance which is described" in item 661.70 of Subpart A. We think it obvious that the omission from the headnote of words specifically including parts of a "machine or appliance" is no indication that articles which meet the description of "parts thereof" under item 661.70 are not subject to the provisions of the headnote. [Italics quoted.]

> In short, we are satisfied that the present "parts" of the "machinery" and "equipment", which meet the requirements for classification in Item 661.70, are covered by the term "machine or appliance" in headnote 1. We point out that that term appears to have been selected not just for its applicability to the merchandise and parts of Item 661.70, but also to all the diverse other

merchandise, and "parts thereof", described in other items in Subpart A of Part 4 of Schedule 6, to all of which the headnote applies.

In view of the foregoing we are of the opinion that the classification of the imported merchandise under the provisions of item 661.70, *supra*, is correct. The protest is accordingly overruled.

Judgment will be entered accordingly.