### APPLICATION OF AD VALOREM RATE TO THE COST OF INSERTS AND BOX TOPS

Plaintiff, as we have seen, urges that "the *cost* of the box tops and plastic inserts should have been assessed *ad valorem* duty at the column 1 rate of 40% * * *". (Emphasis added.) For the following additional reason, the relief requested by plaintiff may not be granted.

The ad valorem duty in column 1 under item 545.85, TSUS, clearly may not be applied to a *cost per se*, but rather must be applied to an *appraised value* as determined under section 402 or 402a. However, because under headnote 6(b)(i) usual containers of imported merchandise are not subject to treatment as imported articles, *ipso facto* they are not subject to appraisement pursuant to section 402 or 402a.[7] Consequently, as column 1 under item 545.85, TSUS, specifies an ad valorem duty, and as the inserts and box tops are not subject to appraisement, the court could not in any event order a reliquidation of the inserts and box tops at the column 1 rate under item 545.85, as claimed by plaintiff.

The action is dismissed and judgment will be entered accordingly.

(C.D. 4355)

### J. M. ALTIERI, A/C ANTONIO ROIG, SUCESORES S. EN C. *v.* UNITED STATES

---

[7] Of course, as previously noted, the cost of the inserts and box tops must be included in the appraised value of the Christmas ornaments under the headnote and valuation statute.

United States Customs Court, Third Division

(Decided June 6, 1972)

*Jaime Pieras, Jr.; Robert N. Altman; Siegel, Mandell & Davidson (Joshua M. Davidson and Brian S. Goldstein* of counsel) for the plaintiff.

*Harlington Wood, Jr.,* Acting Assistant Attorney General (*Bernard J. Babb* and *Susan C. Cassell,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge

LANDIS, Judge: This case involves articles of copper, in the shape and form of tubes, exported from Mexico, and entered at San Juan, Puerto Rico, on July 16, 1965.

Customs classified the articles as seamless copper tubes and assessed duty at 5.2 cents per pound under TSUS (Tariff Schedules of the United States) item 613.02.

Plaintiff claims that although the articles are, indeed, seamless copper tubes they are, in the sense of the tariff schedules properly classifiable as parts of machinery for use in the manufacture of sugar, free of duty under TSUS item 666.20. Defendant, *inter alia,* contends that the sense of the tariff schedules precludes classifying under TSUS item 666.20, articles that are tubes, and articles and parts of articles that are specially provided for elsewhere in the tariff schedules.

Trial of this case was had in San Juan where plaintiff adduced the testimony of two witnesses. The exhibits received in evidence, without objection, are exhibit 1, identified as correctly representing the imported merchandise; exhibit 2, identified as a print of the machinery (evaporator) for which the copper tubes were imported; exhibit 3, a print identified as "a top view of what the machinery looks like"; illustrative exhibit 4, identified as an "L" type water copper tube with a fitting attached; and defendant's exhibit A, identified

as a catalogue of Anaconda Nacional of Mexico (limited to page 8 thereof).

Before weighing the evidence, we take up the opposing contentions: plaintiff's that, as a matter of law, tubes that are parts of machinery used in the manufacture of sugar are excluded from classification under TSUS item 613.02; and defendant's that, as a matter of law, tubes that are parts of machinery used in the manufacture of sugar are excluded from classification under TSUS item 666.20. Those contentions are founded on the pertinent context in which seamless copper tubes and parts of machinery for use in the manufacture of sugar are classified in the tariff schedules, as follows:

SCHEDULE 6. – METALS AND METAL
PRODUCTS

\*       \*       \*       \*       \*       \*       \*

PART 2.—METALS, THEIR ALLOYS, AND
THEIR BASIC SHAPES AND FORMS

Part 2 headnotes:[1]

1. This part covers precious metals and base metals \* \* \*, their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. \* \* \* This part does not include—

\*       \*       \*       \*       \*       \*       \*

(iv) other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

\*       \*       \*       \*       \*       \*       \*

SUBPART C. – COPPER

Subpart C headnotes:

1. This subpart covers copper, its alloys, and their so-called basic shapes and forms, and in addition covers copper waste and scrap.

\*       \*       \*       \*       \*       \*       \*

Pipes and tubes and blanks therefor, pipe and tube fittings, all the foregoing of copper:
    Pipes and tubes and blanks therefor:
        Copper, other than alloys of copper:

613.02           Seamless _____ 5.2¢ per lb.

\*       \*       \*       \*       \*       \*       \*

---

[1] The headnotes are part of the substantive law of the tariff schedules designed to clarify the relationships "between the various schedules, parts, and subparts and the classification descriptions incorporated therein." Tariff Classification Study, Submitting Report, page 9.

### PART 4. — MACHINERY AND MECHANICAL EQUIPMENT

Part 4 headnotes:

1. This part does not cover—
   (i) bobbins, spools, cops, tubes, and similar holders;

   \*   \*   \*   \*   \*   \*   \*

   (vi) articles and parts of articles specifically provided for elsewhere in the schedules.

   \*   \*   \*   \*   \*   \*   \*

### SUBPART C.—AGRICULTURAL AND HORTICULTURAL MACHINERY; MACHINERY FOR PREPARING FOOD AND DRINK

   \*   \*   \*   \*   \*   \*   \*

Industrial machinery for preparing and manufacturing food or drink, and parts thereof:

| | | |
|---|---|---|
| 666.20 | Machinery for use in the manufacture of sugar, and parts thereof____ | Free |

The support the opposing contentions draw from the headnotes is obvious. Schedule 6, part 2, where customs classified the imported articles under subpart C, item 613.02, states that it *does not include other articles specially provided for elsewhere in the tariff schedules, or parts of articles.* Schedule 6, part 4, where plaintiff claims the imported articles should be classified, under subpart C, item 666.20, states that it *does not cover articles and parts of articles specifically provided for elsewhere in the tariff schedules.* For the reasons discussed in the recently decided case, *The Servo Company* v. *United States,* 68 Cust. Ct. 83, C.D. 4341 (1972), appeal pending), we conclude and construe that schedule 6, part 2, does not, as it states its does not, include parts of articles and that, perforce, the basic shapes and forms of metal classified in schedule 6, part 2, including pipes and tubes, are not specific provisions for parts of articles.

Defendant's added argument that tubes that are parts of machinery used in the manufacture of sugar cannot be classified in schedule 6, part 4, under TSUS item 666.20, because part 4 does not cover "bobbins, spools, cops, *tubes* [emphasis added], and similar holders", is an interpretation that is also, in our opinion, contrary to the tariff sense of the exclusion. As plaintiff points out in its reply brief, the term "tubes" in the exclusionary phrase is associated with "bobbins, spools, cops \* \* \* and similar holders". Bobbins, spools and cops are definitively holders.[2] It is clear to us, therefore, that the term "tubes" must

---

[2] Webster's New International Dictionary, Second Edition (1960).

*noscitur a sociis* refer to tubes that are definitively holders of the same class as bobbins, spools and cops. Defendant does not profess that the imported copper tubes are holders of the class of bobbins, spools and cops. The record, which we discuss *infra*, establishes that they are not. The exclusion of bobbins, spools, cops, tubes, and similar holders from classification in schedule 6, part 4, is not, although defendant contends to the contrary, of the same force or effect as the headnote this court construed in *Amalgamated Sugar Company* v. *United States*, 60 Cust. Ct. 268, C.D. 3361, 281 F. Supp. 373 (1968). The headnote provision before this court in *Amalgamated* was headnote 1 to subpart A, part 4, schedule 6, which provides that a machine or appliance described in subpart A and also described elsewhere in part 4 (i.e., another subpart of part 4), is classifiable in subpart A. In *Amalgamated*, this court construed that, in the tariff sense, the headnote to subpart A so invaded every other classification in part 4, that pumps for liquids, classified under subpart A, remained classifiable in subpart A notwithstanding the fact that they may be specially designed and chiefly used as machinery for the manufacture of sugar classified elsewhere in part 4, to wit, under subpart C, TSUS item 666.20. The language of the schedule 6, part 4 headnote stating that it does not cover bobbins, spools, cops, tubes, and similar holders is not invasive but merely preclusive. Accordingly, we hold that tubes that are parts of machinery used in the manufacture of sugar are not precluded from classification in schedule 6, part 4, and proceed next to weigh plaintiff's evidence that the imported copper tubes are, as claimed, parts of machinery used in the manufacture of sugar, dutiable under TSUS item 666.20.

The record establishes, as defendant virtually concedes, that the imported tubes, in the condition imported, were designed and dedicated to use in machinery (i.e., heat exchangers in evaporators) used in the manufacture of sugar and that the imported tubes were solely so used. Defendant's position is that evidence of the sole use of the imported tubes as parts for machinery used in the manufacture of sugar is not enough. Substantive to that position, defendant argues that the classification of machinery for use in the manufacture of sugar, both under paragraph 1604 of the Tariff Act of 1930 and TSUS item 666.20, is a chief use provision; that chief use is determined "in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined";[3] that pursuant to the latter rule, it "was incumbent upon plaintiff to show that the copper tubes were in a class of tubes which were solely or chiefly used

---

[3] TSUS General Headnotes and Rules of Interpretation, 10 (e) (1).

in heat exchangers which were parts of evaporators chiefly used in the manufacture of sugar", which, as defendant reads the record, plaintiff failed to do.[4]

Defendant's argument, however, fails to take note of the TSUS rule with respect to tariff provisions of TSUS that provide for "parts". As stated in TSUS, "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part".[5] We have already held that the tariff classification of pipes and tubes under TSUS item 613.02 is not a specific provision for a pipe or tube that is a "part" of an article, *The Servco Company* v. *United States, supra.* The TSUS rule of interpretation, it will be noted, does not state, as a matter of law, what a "part" is for tariff purposes, but merely what the tariff provision for "parts" covers (i.e., articles solely or chiefly used as a part). Before considering and weighing evidence as to the sole or chief use of an article, therefore, it is necessary to determine that the imported article is a "part". If the evidence establishes that the imported article is a "part" that is solely so used, that, as we construe the rule, ends it, and discussion of argument as to the rule of chief use "would be *obiter* and unnecessary to our decision of the controlling issue[s] here presented", *United States* v. *Fibre Making Processes, Inc.,* 33 CCPA 110, 113, C.A.D. 323 (1946).

Upon the record which we next weigh and discuss we hold that, in the judicially construed tariff sense, the imported tubes which were designed and dedicated for sole use with machinery used in the manufacture of sugar are parts of said machinery and sustain the protest.

The copper tubes imported in this case are not claimed to be "machinery for use in the manufacture of sugar" under TSUS item 666.20 but more specifically "parts thereof" free of duty under TSUS item 666.20. "[W]hether a given article constitutes a part of another

---

[4] Upon defendant's argument, the relevant TSUS history pertaining to TSUS classifications controlled by use (Tariff Classification Study, Submitting Report, Part II, pages 5, 14, Appendix A, page 50) and the TSUS General Headnotes and Rules of Interpretation, rule 10(e), providing that classifications by use are to be determined and controlled by the rule of "chief use" or "actual use" stated therein, the parties were ordered to file supplemental briefs certified to the question:

    Is the TSUS item 666.20 classification "Machinery for use in the manufacture of sugar, and parts thereof" a classification controlled by rule of "chief use" or controlled by rule of "actual use" under rule 10(e) *supra?*

The legislative history, cited *supra,* and in the supplemental briefs, discussing the problems attending tariff classifications by "chief use" and "actual use", in our opinion, is too indefinite and uncertain to resolve that TSUS item 666.20 is an "actual use" provision as plaintiff contends. Since TSUS item 666.20 is in the same classifying language as paragraph 1604 of the Tariff Act of 1930, from which TSUS item 666.20 is derived, we are constrained to follow the established judicial construction that as classified in paragraph 1604, *United States* v. *Union Sugar Div., Consolidated Foods Corp.,* 54 CCPA 1, C.A.D. 892 (1966), and TSUS item 666.20, *S. Jackson & Son, McCandless, Inc.* v. *United States,* 65 Cust. Ct. 327, C.D. 4097 (1970), "machinery for use in the manufacture of sugar" is a classification by "chief use".

[5] TSUS General Headnotes and Rules of Interpretation 10(ij).

article depends upon the nature of the so-called part and, we might add, to some degree on the function and purpose of the so-called part in its relation to the article to which it attaches or with which it is designed to serve." *Gallagher & Ascher Company* v. *United States*, 52 CCPA 11, 13, 14, C.A.D. 849 (1964).

As we commented earlier, defendant virtually concedes that the evidence establishes that the imported tubes were designed, and dedicated for sole use in evaporators installed at plaintiff's plant housing plaintiff's machinery for use in the manufacture of sugar. Defendant contends, however, there is no evidence "that the [imported] tubes were in a class of tubes which were solely or chiefly used in heat exchangers which were parts of evaporators chiefly used in the manufacture of sugar." In support of the contention, defendant cites the record testimony that evaporators with heat exchangers are also used in power plants and in distilleries, and that some distilleries use copper tubes in heat exchangers. If we understand defendant's point correctly, it is that, in order to prevail, plaintiff was bound to prove that the evaporator (which was not imported and as to which there is no issue of classification), for which the imported copper tubes were solely designed, was of a class or kind chiefly used in the manufacture of sugar.[6] To pursue defendant's rather novel point would take us into a morass of considerations and more extended discussion than either the facts, or defendant's mere statement of the point compel. The sufficient answer is that the rule of chief use, when and if applicable, is a rule for classifying imported articles, and the imported articles in this case are tubes not evaporators.

The tariff item classifying "machinery for use in the manufacture of sugar", obviously does not identify the kinds of machines or machinery it is intended to cover except in the manner of their use. Machinery implies an aggregate of means and appliances which, in the context of item 666.20, are used to manufacture sugar. *United States* v. *J. E. Bernard & Co., Inc.*, 28 CCPA 182, 184, C.A.D. 142 (1940); *John V. Carr & Son., Inc., et al.* v. *United States*, 40 Cust. Ct. 292, C.D. 1996 (1958). Upon this record, it is fair to infer that plaintiff's evaporator is an integral component of its aggregate machinery, used in the manufacture of sugar. The imported tubes are, in turn, designed in a fashion that dedicates them to use in plaintiff's evaporator. When installed the imported tubes are an integral component of plaintiff's evaporator and serve a useful function in the manufacture of sugar.

---

[6] Evaporators and parts thereof except, *inter alia*, sugar machinery (and parts thereof, *Costa International Corp.* v. *United States*, 58 CCPA 48, C.A.D. 1003 (1970); compare, *Castle & Cooke, Inc.* v. *United States*, 68 Cust. Ct. 75, C.D. 4339 (1972) imported into the United States are, it appears, specially provided for under TSUS item 661.70 as industrial machinery for the treatment of materials by a process involving a change of temperature.

Upon these facts, the imported tubes are parts "dedicated to a sole specific use and 'for no other use'", but with plaintiff's evaporators used in the manufacture of sugar, *Gallagher & Ascher* v. *United States, supra.* See also, *Ideal Toy Corporation* v. *United States,* 58 CCPA 9, C.A.D. 996 (1970).

There being no specific tariff provision for these imported tubes, plaintiff's claim that they are parts of machinery for use in the manufacture of sugar, cf. *Gallagher & Ascher Company* v. *United States,* 63 Cust. Ct. 223, C.D. 3899 (1969), free of duty under TSUS item 666.20, cf. *Fank L. Allen, Inc.* v. *United States,* 8 Cust. Ct. 436, Abstract 46797 (1942), is sustained.

Judgment will be entered accordingly.