(C.D. 3060)

J. E. Bernard & Co., Inc. v. United States

United States Customs Court, First Division

(Decided July 18, 1967)

*Schwartz & Lidstrom* (*Joseph Schwartz, Earl R. Lidstrom*, and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*Carl Eardley*, Acting Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge

OLIVER, Judge: This protest covers certain electrical components classified as parts of projectors under item 722.50 of the Tariff Schedules of the United States and assessed with duty at the rate of 35 per centum ad valorem. Plaintiff originally made its claim under item 722.42 at the rate of 11.5 per centum ad valorem. This was, however, abandoned and superseded by the following amended claims:

| Exhibit No. | Article No. | TSUS Provision | | Rate |
|---|---|---|---|---|
| 1 | 59691 | Item 685.90 | Electrical * * * fuses * * * | 17.5% ad val. |
| 2 | 026638 | Item 682.10 | Transformers | 12.5% ad val. |
| | | | [An alternative claim under item 682.60 for converters, rectifiers and rectifying apparatus, and parts thereof, or parts of transformers, other, at the rate of 15 percent ad valorem, is deemed abandoned, there being no reference made to it in plaintiff's brief.] | |
| 3 | 58587 | Item 686.10 | Resistors, fixed or variable * * * | 12.5% ad val. |
| 4 | 56329 | Item 535.14 | * * * ceramic electrical insulators whether or not in part of metal * * * Other | 30% ad val. |
| | | | [An alternative claim under item 536.15 for ceramic articles, n.s.p.f., other, at the rate of 20 percent ad valorem, is deemed abandoned, there being no reference made to it in plaintiff's brief.] | |
| 5 | 58732 | Item 773.30 | Electrical insulators, of rubber or plastics | 10% ad val. |
| 6 | 58737 | | | |
| 7 | 58738 | | | |
| | | | [An alternative claim with respect to articles 58737 and 58738 was made under item 685.90. This is also deemed abandoned, there being no reference made thereto in plaintiff's brief.] | |

| Exhib-it No. | Article No. | TSUS Provision | | Rate |
|---|---|---|---|---|
| 8 | 56352 ⎫ | Item 685.90 | Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof | 17.5% ad val. |
| 9 | 56411 | | | |
| 10 | 56353 | | | |
| 11 | 58734 | | | |
| 12 | 58735 | | | |
| 13 | 58736 | | | |
| 14 | 58203 ⎭ | | | |

An alternative claim under item 684.70 of the tariff schedules at the rate of 15 per centum ad valorem for—

* * * audio-frequency electric amplifiers * * * and parts of the foregoing articles (including microphone stands)

has also been pressed. However, a further alternative claim under item 688.40 of said schedules will be deemed abandoned as plaintiff makes no mention of it in its brief.

Item 722.50, *supra*, appears as follows:

Projectors, and combination camera-projectors, with or without sound reproducing, or sound recording and reproducing, systems:

    *       *       *       *       *       *       *

Parts of any of the foregoing projectors or camera-projectors_____35% ad val.

General Interpretative Rule 10(ij):

a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

The plaintiff called one witness, Mr. Frederick J. Ballard of the Bell & Howell Co., the actual importer herein. The defendant did not introduce the testimony of any witness nor offer into evidence any exhibits. While plaintiff submitted a brief, the defendant requested that it be relieved from so filing, stating that it concurred in the claims set forth by the plaintiff.

Mr. Ballard testified that for the past 6 years he has been the manager of the "electrical manufacturing group" at the Bell & Howell Co. where he is concerned with the manufacture of electrical amplifiers, audio amplifiers, and electrical automatic exposure systems for cameras (R. 3, 4). He holds a degree in electrical engineering from the University of Hawaii and, since 1948, has been involved with the design and manufacture of electrical articles (R. 4).

He further testified that he ordered the items described in the invoice and that he is personally familiar with them. They are used in the manufacture of audio–frequency amplifiers which he stated is a device for reproducing an electric impulse into sound (R. 4, 5). The audio-frequency amplifiers are in turn parts of 16 millimeter sound projectors which are devices that will project 16 millimeter film with an accompanying sound track (R. 5, 6).

Mr. Ballard identified the 14 exhibits received into evidence as representative samples of the merchandise described on the invoice and described them in particular as follows:

Exhibit 1 (article No. 59691) is a 4 ampere fuse which is used as a safety or protection device. It is a general purpose fuse and not just limited to audio-frequency amplifiers (R. 7, 17, 18).

Exhibit 2 (article No. 026638) is an oscillator coil which is essentially a transformer. It can be used in either a projector or a tape recorder (R. 8, 18, 19).

Exhibit 3 (article No. 58587) is a 10,000 OHM variable resistor which can be used in audio-frequency amplifiers, radios, tape recorders, and computers (R. 8–9, 19–20).

Exhibit 4 (article No. 56329) is an insulator used to insulate the variable resistor from the printed circuit board in an audio-frequency amplifier. It can also be used for "any insulating application" so as to avoid an electrical short circuit. The article is made of steatite, a ceramic material (R. 9, 20–21).

Exhibit 5 (article No. 58732) is a rubber grommet, an insulating device. It is not limited in use to an audio-frequency amplifier, nor to a projector, but also finds application in portable radios (R. 10, 21, 22).

Exhibits 6 and 7 (articles No. 58737 and No. 58738), black and red phenolic insulating sleeves, are used in audio-frequency amplifiers, projectors, as well as in test equipment (R. 10–11, 22–23).

Exhibit 8 (article No. 56352) is a tube receptacle which receives a tube in order to complete an electrical circuit (R. 12, 23).

Exhibit 9 (article No. 56411) is also a tube receptacle (R. 13, 23).

Exhibit 10 (article No. 56353) is a valve clip used for holding a tube in place in its receptacle (R. 13, 14, 23).

Exhibits 11 and 12 (articles No. 58734 and No. 58735) are black and red plugs. The black plug is a B minus plug, while the red is a B plus (R. 14, 15, 24).

Exhibit 13 (article No. 58736) was first described as a socket and later a pin. It is used for making a connection between a wire and a printed circuit board. It can also be used as a connector which is inserted into a female receptacle to complete a circuit (R. 15–16, 24–25).

Exhibit 14 (article No. 58203) is a jack receptacle into which a jack is inserted forming a completed circuit in a microphone system (R. 16, 25).

Exhibits 8 through 14 are not limited in use to audio-frequency amplifiers but are also used in television and radio.

On cross-examination, the witness stated that the involved merchandise was made to Bell & Howell's specifications; that such specifications, however, are common to electrical components of this line; that these articles were intended to be used in a 16 millimeter sound projector; and that the merchandise at bar was used both in 16 millimeter sound projectors and in language master machines which are electrical teaching aids containing an audio-frequency amplifier (R. 26, 28, 30).

It is plaintiff's primary contention that, by operation of General Interpretative Headnote 10(ij), the articles involved in this case are properly dutiable under the specific provisions listed, *supra*.

While cognizant of the defendant's capitulation in this case, it remains for the court, of course, to apply the language of the statute to the record evidence and return conclusions of law thereon.

General Interpretative Rule 10(ij) of the General Headnotes and Rules of Interpretation, *supra*, sets forth a specific definition as to what constitutes a part and further provides that a provision for " 'parts' of an article" will not prevail in competition with a "specific provision for such part." The intention of this rule was expounded upon by the Tariff Commission in its submitting report, dated November 15, 1960, wherein the following appears:

* * * At the present time, much uncertainty exists in connection with the tariff treatment of parts of articles. In some instances, a mere provision for "parts" prevails over much more specific descriptions in the tariff schedules. Even certain "universal" components such as nuts, bolts, screws, and so forth, are sometimes classified as parts of a particular article according to their type and specific uses. In the proposed schedules, specific provision is made for the more usual components of articles. Under the rule expressed in headnote 10(ij), these specific provisions will prevail over a mere provision for "parts" of a particular article.

Also appearing in the section for Additional Explanatory Notes and Background Materials at page 99 of the Seventh Supplemental Report of the Tariff Classification Study, 1963, is the following:

General headnote 10(ij)—*Parts*. A provision for "parts" does not prevail over a specific provision for such part. Thus, a provision for "parts" is more specific than a provision for "articles, not specially

provided for", but is not more specific than provisions such as the following for: "springs" (item 652.85), "illuminating articles" (items 653.30–.40), "pumps" (items 660.90–661.15), etc.

The merchandise at bar, represented by exhibits 1 through 9, 11, 12, and 14, appears to be dutiable as claimed since it is covered in each instance by statutory language that is clearly "specific" in providing for each article by name or specific function. With respect to exhibit 13, we likewise believe that the language of item 685.90 providing for "* * * other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; swithboards (except telephone switchboards) and control panels * * *" is language that is sufficiently specific so as to meet the test of General Interpretative Rule 10(ij) in that it not only describes a group of articles but also the specific functions they perform. They are thus described by function as specifically as those in the item described by name.

We are aware that the word "apparatus" ordinarily connotes a complexity of materials, instruments, or machinery, and that exhibit 13 is of rather simple design. See Webster's Third New International Dictionary, 1966; Funk and Wagnalls Standard Dictionary, International Edition, 1963. Nevertheless, item 685.90 names as "electrical apparatus" merchandise equally uncomplex in design, such as the electrical plugs represented in exhibits 11 and 12, and it would appear that this provision has not been limited by Congress to the complex.

On the other hand, exhibit 10 is succinctly described in the record as a "valve clip used for retaining the tube in the receptacle." Its function as electrical apparatus to make, break, protect, or connect an electrical circuit is not explained, and it appears to act more to maintain or support items used in an electrical circuit. Likewise, it does not appear that this article is classifiable under plaintiff's alternative claim as part of audio-frequency amplifiers since the witness explained that it is used as well in televisions and radios. A showing of chief use as required by General Interpretative Rule 10(ij) is lacking and plaintiff's claim for this article is, therefore, not sustainable.

To the extent indicated, judgment will be rendered for the plaintiff.