**WEST COAST GLASS DISTRIBUTORS**
**v.**
**UNITED STATES.**

**C.D. 3797; Protest Nos. 65/21539–83379**

**and 65/21544–83696.**

United States Customs Court,
Third Division.

April 21, 1969.

Stein & Shostak, Los Angeles, Cal. (S. Richard Shostak, Los Angeles, Cal., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Arthur E. Schwimmer and Mollie Strum, New York City, trial attorneys), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

These two protests, consolidated for trial, involve automobile windshields imported from England and West Germany in the last month of 1964 and first quarter of 1965. The windshields were made of laminated glass, a kind of safety glass that reduces the danger of injury from flying fragments in case of an accident. Explanatory Notes to the Brussels Nomenclature (volume II, page 616), 1955.

Upon arrival at Los Angeles the windshields were entered and classified under the Tariff Schedules of the United States (TSUS) as follows:

> 544.41 Laminated glass made of two or more layers of any of the glass described in items 541.-11 through 544.31, inclusive, and other material, whether or not shaped or framed or both ..............................18% ad val.

Plaintiff claims that the windshields are more than mere laminated glass; that they are parts of motor vehicles and should, therefore, be classified under the following TSUS item:

> Chassis, bodies (including cabs), and parts of the foregoing motor vehicles:
>
> Bodies (including cabs) and chassis:
>
> *　*　*　*　*　*　*　*
>
> 692.25*　　Other ..........................8.5% ad val.

The official papers are in evidence. Plaintiff also put in evidence a catalog titled "NAGS AUTO GLASS PARTS SERVICE", containing the National Auto Glass Specifications by pattern and part number, for all makes of auto glass, including windshields (exhibit 1), and a hand-drawn rough sketch of laminated flat glass and tempered glass.

On trial Robert B. Zax, general manager and vice-president of West Coast Glass Distributors and National Auto Glass Company, testified that the imported windshields were made from glass which is:

> * * * cut to a pattern, first, and then the—there are two pieces cut, the inner piece being smaller than the outter [sic] piece. They are cut to a pattern and placed on a mold, like, flat across the mold, and they are sent through an oven. As the heat builds up, and they become molten, they drop down into the mold, and there's a slightly different mold between the male and the female piece. After they are bent to shape, they are then run through a press and then through a heated oven again. Excuse me: Before they are run through the press, they are made into a sandwich, the two pieces, and again a piece of vinyl inner layer. Then they are run through a press, into an oven, through an auto

---

* Item 692.25 was redesignated item 692.27 retroactively to January 18, 1965 by the Automotive Products Trade Act of 1965, approved October 21, 1965, Public Law 89–283, 79 Stat. 1016. Plaintiff abandoned a protest claim under TSUS item 692.22. (R. 2–3).

cleave, for the same purpose as before, the difference being that they are then bent. They are bent.

Q. Before they are laminated?—A. Right.

Q. Why are they bent?—A. To fit a particular car. To a pattern. They are bent into a mold.

Q. Once the glass is bent into this shape and brought through the oven and completed, the manufacture is completed, what can you do with that article?—A. You can put it in a car that it's made for.

Q. In any other car, other than the one that it is made for?—A. No. [R. 17, 18.]

Asked, later in his testimony, if he was familiar with the term "shaping of laminated glass", Mr. Zax stated that he was and that "[i]t would mean cutting it to a pattern." (R. 21.) Defendant cross-examined Mr. Zax on the latter statement and elicited the following:

Q. Mr. Zax, when this merchandise comes into the country, is it shaped, laminated glass?—A. And bent, yes.

JUDGE WATSON: When it comes into the country?

THE WITNESS: Yes, sir. It's shaped, because it's laminated and bent.

Q. What is the difference between shaping and bending?—A. Shaping is cutting it to a pattern, and bending it makes it a permanent thing. You can shape a piece of laminated glass more than one time, but you can only bend it once. [R. 22, 23.]

The sum of Mr. Zax's testimony establishes that the windshields are laminated glass, shaped, as classified, and parts of motor vehicles, as claimed. We have to settle on which of the two is the proper classification for the purpose of the tariff schedules. Were these classifications under the Tariff Act of 1930, decision would quite likely turn for plaintiff on authority of Gallagher &

Ascher Company v. United States, 52 CCPA 11, C.A.D. 849, cited by plaintiff. The Tariff Schedules of the United States, however, are "subject to the rules of interpretation set forth * * * [therein] and to such other rules of statutory interpretation, not *inconsistent* therewith, as have been or may be developed under administrative or judicial rulings." [Emphasis added.] Tariff Schedules of the United States, General Headnotes and Rules of Interpretation 10(a).

Both sides avert in their briefs to general interpretative rule 10(ij) which states that:

a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

Plaintiff argues that the provision in TSUS item 544.41 for "laminated glass" is not specific enough to prevail over the "parts" provision in TSUS item 692.25 because laminated glass specifies a material rather than the name or function of any particular article. That argument raises question as to just how specific a provision must be to meet the interpretative rule. We doubt that the question is susceptible of a rule that will govern all cases. There are so many descriptive tariff provisions in TSUS that each case must, necessarily, be decided on its own relative terms. Failure to designate a "part" by its particular name or function (i. e. windshield) cannot, in our opinion, lessen the specificity of an existing tariff provision, such as it is.

The explanatory history of interpretative rule 10(ij), we believe, provides the best answers to the question we have raised. Granted the tariff commission's initial report on interpretative rule 10 (ij) to the President, and to the Chairman of the Committee on Ways and Means of the House and the Committee on Finance of the Senate, did not discuss how specific a provision must be to pre-

vail over a provision for "parts", Tariff Classification Study, Submitting Report, at page 19, its intention came through in a subsequent report as follows:

General headnote 10(ij)—*Parts.* A provision for "parts" does not prevail over a specific provision for such part. Thus, a provision for "parts" is more specific than a provision for "articles, not specially provided for", but is not more specific than provisions such as the following for: "springs" (item 652.85), "illuminating articles" (item 653.30–.40), "pumps" (items 660.90–661.15), etc. [Tariff Classification Study, Seventh Supplemental Report, at page 99.]

The broad sweep of general interpretative headnote 10(ij) is apparent in the above explanation. Compare J. E. Bernard & Co., Inc. v. United States, 59 Cust. Ct. 31, C.D. 3060; C. F. Liebert v. United States, 60 Cust.Ct. 677, C.D. 3499; Foster Wheeler Corp. v. United States, 61 Cust.Ct. ——, C.D. 3556, with Border Brokerage Company, Inc. v. United States, 58 Cust.Ct. 240, C.D. 2948.

Plaintiff to the contrary, the provision for laminated glass, shaped, manifestly provides for more than the material itself. Witness Zax testified that the term "shaped" means cutting to a pattern. He did, however, in some of his replies, use the term in its more ordinary sense meaning to mold, fashion or bend. Funk & Wagnalls Standard Dictionary, 1963; Webster's Third New International Dictionary, 1966. The laminated glass here is, as a matter of fact, shaped into windshields. We believe that a provision which describes a certain type of glass by how it is made is no less specific for tariff purposes than were it described by name or function. Laminated glass

whether or not shaped, quite obviously, is intended to cover a wide category of articles including windshields. It is not for us to say that every shaped article made of laminated glass, that is a part for something else, should have been provided for more specifically, if it was not intended to be classified as a part. Congress has provided an effective controlling rule, the rule has been explained, and we must follow the rule where it can be fairly and reasonable applied.

Classification of these windshields as laminated glass, shaped, following interpretative rule 10(ij), squares with what the tariff commission understood when, in its basic report on tempered glass to the President and respective committee chairmen in both Houses, the commission took occasion to state that:

Item 544.31 is a new provision. It covers specially tempered glass that is more resistant to shock than ordinarily tempered glass, and, when broken, disintegrates into small rounded-edge pieces, rendering it particularly adaptable to vehicle glazing. Somewhat lower in cost than laminated glass, *it is extensively used as a substitute for laminated glass in the glazing of automobiles.* * * * [Emphasis added. Tariff Classification Study, Schedule 5, at page 137.]

We cannot be blind to such definitive history. Rifkin Textiles Corp. v. United States, 54 CCPA 138, C.A.D. 925. Accordingly, we hold that, under interpretative rule 10(ij), TSUS item 544.41 for laminated glass made of two or more layers of glass, and other material, shaped, is sufficiently specific to cover these imported windshields.

The protests are overruled and judgment will so enter.