(C.D. 3971)

Great Western Sugar Co.
Railway Express Agency, Inc. } *v.* United States

United States Customs Court, Second Division

(Decided February 27, 1970)

*Barnes, Richardson & Colburn* (*James H. Lundquist, James S. O'Kelly, Edward A. Walsh,* and *J. Bradley Colburn*) of counsel for the plaintiffs.

*William D. Ruckelshaus,* Assistant Attorney General (*Steven Sosnov* and *Andrew P. Vance,* trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in this case consists of knives or blades for sugar beet slicing machines imported from England and entered at the port of New York. They were assessed with duty at 10 per centum ad valorem under item 649.67 of the Tariff Schedules of the United States as knives and cutting blades for power or hand machines other than for agricultural or horticultural machines. It is claimed that they are entitled to free entry under item 666.20, as parts of machinery for use in the manufacture of sugar, or under item 649.65, as knives and cutting blades for agricultural machines. A claim relating to tools known as fraisers was abandoned at the trial and will be dismissed.

The record consists of samples of the imported merchandise (exhibits 1A and 1B), exhibits illustrative of the process of manufacturing sugar from sugar beets, and the testimony of five witnesses, all

of whom had had extensive experience in the sugar beet industry and were well qualified to testify as to the manufacturing operations.

The facts are undisputed and may be summarized as follows: A number of operations are involved in producing sugar from sugar beets. When beets are received from the growers by truck or railway car, they are dumped into a flume which transports them into the factory. As they are carried into the factory, they pass through trash catchers which pick out loose weeds, rocks and other foreign materials. The beets are then elevated into beet washers for further cleaning and removal of foreign material. The purpose of the elaborate cleaning process is to remove as much foreign material from the beets as possible and thereby to protect the beet-slicer knives from damage.

Thereafter, the beets fall into a hopper above the beet slicing machines. In this operation the beets are sliced into a well-defined size and shape, depending on the conditon desired. These slices are called cossettes and consist of narrow strips of beet material which are either V-shaped or square shaped (exhibits 6 and 7).

The knives or blades involved herein are used by the sugar beet industry in beet slicing machines. They have no other known commercial use and their employment in the beet sugar industry has been the same for over 50 years. The knives consist of a single piece of metal, about 6½ inches long and 3 inches wide, grooved or channeled, and having a series of V-shaped edges. They are formed in that fashion in order to produce the desired cossettes, and can be arranged in the machine in different ways to cut either a V-type cossette or a square cossette.

Two basic kinds of slicing machines are used to produce cossettes: The drum type and the disk type. The knives involved herein are specially designed for the drum type slicing machine used by the Great Western Sugar Co. That machine consists of a drum around the periphery of which are a series of knife blocks fastened to the drum by clamps. Six beet-slicer knives are held in place in each knife block. As the drum rotates, beets are fed into it from the hopper and are forced against the slicer knives which slice them into cossettes. The cossettes then fall onto a conveyor belt and are carried to the diffusion stage where sugar extraction takes place. At that stage the cossettes are discharged into the lower end of a diffuser tank and water is introduced at the top end. By means of a screw, the cossettes are slowly conveyed to the upper end. As the water flows down through the bed of cossettes, it dissolves and extracts the sugar. The solution obtained in this process is called raw juice and contains approximately 15 percent sugar and non-sugar constituents. The raw juice then goes through a number of other processes until sugar crystals are obtained.

According to the record, the efficiency of the sugar-making process depends in large part upon the slicing operation because the quality of the cossettes produced by the knives controls sugar extraction in the diffuser. The cossettes must be formed and shaped so as to expose the surface of the cells of the beet in order that sugar may be extracted efficiently. Ideally, the cossettes should be as small as possible in cross section, so that the sugar has less distance to travel to the water, but at the same time they have to be structurally strong enough to stand the physical movement they get. Broken, mashed cossettes result in sugar loss in diffusion and sometimes clog the diffuser causing a temporary shutdown. Because of the importance of the cossettes, they are subjected to constant inspection at the slicing station and the diffusion station to insure good quality.

The shape of the cossettes is determined by the positions of the knives in the blocks and their quality is controlled by the condition of the knives. Since dull or broken knives produce poor cossettes, the knives are frequently removed from the slicing machines for cleaning and sharpening, and in some cases, replacement.

The issue presented is whether beet-slicer knives are properly classifiable as knives and cutting blades for power or hand machines other than agricultural or horticultural machines or are free of duty as parts of sugar manufacturing machinery, or, in the alternative, as knives and cutting blades for agricultural machines.

The pertinent provisions of the tariff schedules are as follows:

Schedule 6, Part 3, Subpart E:

\*        \*        \*        \*        \*        \*        \*

Knives and cutting blades for power or hand machines:

| | | |
|---|---|---|
| 649.65 | For agricultural or horticultural machines (except lawnmower blades)_ | Free |
| 649.67 | Other _____ | 10% ad val. |

Schedule 6, Part 4:

Part 4 headnotes:
1. This part does not cover—

\*        \*        \*        \*        \*        \*        \*

(v) articles and parts of articles specifically provided for elsewhere in the schedules.

\*        \*        \*        \*        \*        \*        \*

Industrial machinery for preparing and manufacturing food or drink, and parts thereof:

| | | |
|---|---|---|
| 666.20 | Machinery for use in the manufacture of sugar, and parts thereof_____ | Free |

General Headnotes and Rules of Interpretation:

10. *General Interpretative Rules.* * * *

\* \* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

In support of its principal claim, plaintiffs rely on the construction of predecessor provisions in the Tariff Act of 1922, and legislative ratification by the Tariff Act of 1930, and claim that there was no intent in the tariff schedules to make any change.

*United States* v. *American Express Co.*, 12 Ct. Cust. Appls. 483, T.D. 40693 (1925), held that blades or knives for beet slicers (apparently similar to those involved herein) were free of duty under paragraph 1504, Tariff Act of 1922, as parts of machinery for use in the manufacture of sugar and not dutiable under paragraph 356, as all other cutting knives and blades used in power and hand machines, on the grounds (1) that the articles were more than knives and performed essential processes other than the mere cutting of beets, that is, formed them into shreds for the following diffusion process, and (2) that the general language of paragraph 356 was not a specific or *eo nomine* provision for the article and did not supplant the language in paragraph 1504 for machinery for use in the manufacture of sugar and parts. The court considered that the proviso to that paragraph, excepting articles specified by name in Title I, was intended to refer to articles mentioned *eo nomine*, such as pruning knives, budding knives, hay, sugar beet, and beet-topping knives, animal clippers, pruning and sheep shears, shovels, spades, scoops, scythes, sickles, grass hooks, and corn knives.

The court also pointed out the purpose Congress had in mind in enacting paragraph 1504, stating (p. 486):

* * * Obviously, it was to give to agriculture any advantage which there might be in the free importation of the implements and machinery of agriculture and their parts. To hold, as contended for by appellant here, would be to do violence to such intention. It would result in the imposition of duties on the importation of every cutting part of an agricultural machine imported, although not specifically named for dutiable purposes in the act, whether it was a plow share, a sickle section for a mower or reaper, a rolling cutter, a blade for a stalk or ensilage cutter, or any other part of such a machine which might happen to have a cutting edge or surface. We can not adopt such a construction. The evident intent to benefit agriculture should be effectuated. * * *

The Summary of Tariff Information, 1929, called attention to this decision (pp. 2178–2179) and no change was made in the Tariff Act

of 1930. This may be, as plaintiffs claim, a legislative ratification of a judicial interpretation, insofar as the Tariff Act of 1930 is concerned. *United States* v. *Charles H. Demarest, Inc.*, 45 CCPA 109, C.A.D. 682 (1958). We note, however, that in later cases it has been held that combs and cutters for sheepshearing machines were classifiable as blades for animal clippers rather than free of duty as agricultural implements and that the provision for chains used for the transmission of power was a specification by name taking chains used in mowers out of classification under paragraph 1604 as parts of agricultural implements. *United States* v. *Sheepshearers Mdse. & Comm. Co.*, 20 CCPA 327, T.D. 46112 (1932); *United States* v. *J. A. Freeman & Son*, 29 CCPA 103, C.A.D. 177 (1941).

In any event, the provisions of the present tariff schedules are different. Machinery for use in the manufacture of sugar, and parts thereof, are no longer included in the provisions for agricultural implements, but are covered in a separate item (666.20) under a superior heading for industrial machinery for preparing and manufacturing food or drink, and parts thereof. In addition, headnote 1(v) to part 4 of schedule 6 (which includes item 666.20) provides that the part does not cover articles and parts of articles specifically provided for elsewhere in the schedules and General Interpretative Rule 10(ij) states that a provision for "parts" does not prevail over a specific provision for such part.

Plaintiffs rely, nevertheless, on the following statement in the Tariff Classification Study (Schedule 6, p. 266):

> * * * Item 666.20 would continue, without change, the existing provision in paragraph 1604 under which such machinery for use in the manufacture of sugar and parts thereof would be free of duty. * * *

Plaintiffs note further that the superior heading to item 649.67 is taken from paragraph 356, and urge that since beet-slicer knives were held not to fall within paragraph 356, they cannot fall within item 649.67.

Although the merchandise in *United States* v. *American Express Co.*, *supra*, was considered to be "more than knives", on the present record we do not regard the instant merchandise as performing any operation other than cutting beets. To be sure the knives are so shaped and arranged in the drum as to cut beets into the shape desired by the manufacturers for further processing, but this result is achieved by cutting and by no other operation. They are no more than the knives and cutting blades for power machines, described in the superior heading to item 649.67. In our view, that item and its heading constitute the type of specific provision contemplated by headnote

1(v), and General Interpretative Rule 10(ij). *J. E. Bernard & Co., Inc.* v. *United States*, 59 Cust. Ct. 31, C.D. 3060 (1967) ; *C. F. Liebert* v. *United States*, 60 Cust. Ct. 677, C.D. 3499, 287 F. Supp. 1008 (1968) ; *Foster Wheeler Corp.* v. *United States*, 61 Cust. Ct. 166, C.D. 3556, 290 F. Supp. 375 (1968) ; *West Coast Glass Distributors* v. *United States*, 62 Cust. Ct. 444, C.D. 3797, 298 F. Supp. 1188 (1969). See also the Seventh Supplemental Report to the Tariff Classification Study, which states (p. 99) :

> General headnote 10(ij)—Parts. A provision for "parts" does not prevail over a specific provision for such part. Thus, a provision for "parts" is more specific than a provision for "articles, not specially provided for", but is not more specific than provisions such as the following for : "springs" (item 652.85), "illuminating articles" (items 653.30–.40), "pumps" (items 660.90–661.15), etc.

The result feared by the court in *United States* v. *American Express Co., supra,* that every cutting part of every agricultural machine would be assessed with duty, is obviated by item 649.65 which provides specially for free entry for knives and cutting blades for agricultural or horticultural machines except lawnmower blades. There is no comparable provision for knives and cutting blades for sugar machinery, although Congress and the drafters of the tariff schedules must have been well aware that such knives and cutting blades existed. Since a special provision was deemed necessary to give free entry to knives for agricultural machines in spite of the provision for parts of agricultural implements in item 666.00, a similar special provision for blades used in sugar machinery would have been included, had it been desired to accord them free entry.

Other parts of sugar machinery have been held dutiable under special provisions of the tariff schedules rather than free of duty under item 666.20. *Amalgamated Sugar Company* v. *United States*, 60 Cust. Ct. 268, C.D. 3361, 281 F. Supp. 373 (1968) ; *American Customs Brokg. Co., Inc., a/c Hamakua Mill Company* v. *United States*, 63 Cust. Ct. 385, C.D. 3923 (1969), appeal pending. In both these cases the special provisions were in subpart A, part 4 of schedule 6. A headnote to subpart A provides:

> 1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

In the *Amalgamated Sugar* case, it was held that pumps used to pump magma in the sugar-manufacturing process were dutiable under item 660.90, as pumps for liquids, and not free of duty under item 666.20, as parts of sugar machinery. The court held that headnote 1 to subpart A, *supra*, contained language of an invading character and

required that the merchandise be classified under that subpart. The court also pointed out that the fact that the subject importations might be a special type of pump for liquids did not render them, for tariff purposes, something other than pumps for liquids as provided for in subpart A.

In *American Customs Brokg. Co., Inc., a/c Hamakua Mill Company* v. *United States, supra*, it was held that a sugar centrifugal machine, used in the manufacture of sugar, was generically a centrifuge and that parts thereof were classifiable under item 661.90, as parts of centrifuges, and not free of duty as parts of sugar machinery. In that case the court pointed out that the statement in the Tariff Classification Study, *supra*, that the Tariff Schedules of the United States item 666.20 continued without change the provision in paragraph 1604 in regard to sugar machinery, could not alter the legislative force of the subpart A headnote.

While the instant case does not involve the subpart A headnote, it does involve other language (headnote 1(v) to part 4 and General Interpretative Rule 10(ij), *supra*) which just as effectively precludes classification of the involved merchandise under item 666.20.

Plaintiffs' alternate claim is that the merchandise is classifiable as knives for agricultural machines and free of duty under item 649.65, *supra*. Under prior tariff acts, sugar machinery was enumerated in the free entry provision for agricultural implements (for instance, paragraph 1504, Tariff Act of 1922; paragraph 1604, Tariff Act of 1930) and the Congressional purpose to benefit agriculture has been considered applicable to such machinery. *United States* v. *American Express Co., supra; United States* v. *Compania Azucarera Del Camuy, Inc.*, 45 CCPA 4, C.A.D. 664 (1957); *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 494, T.D. 36124 (1916). In the case last cited, the court noted (p. 497):

> * * * Whether machinery for use in the manufacture of sugar comes within the meaning popularly attributed to the term "agricultural implements" is unnecessary to decide, inasmuch as Congress has seen fit to enumerate such machinery as agricultural implements. * * *

Under the tariff schedules, as we have pointed out, sugar machinery is not included in the provision covering agricultural implements and machines. Furthermore, in cases under prior statutes, it has been held that the term "agricultural implements" embraces on-farm equipment for the production of food or raising domestic animals, and for handling, packing, and preparing for market, crops produced on the farm, but does not encompass equipment used for packing and marketing for others nor for the manufacture of food products. *United States* v.

*Boker & Co.*, 6 Ct. Cust. Appls. 243, T.D. 35472 (1915) ; *United States v. Tower*, 6 Ct. Cust. Appls. 562, T.D. 36199 (1916) ; *United States v. Spreckels Creameries, Inc.*, 17 CCPA 400, T.D. 43835 (1930) ; *Sortex Co. of North America v. United States*, 56 CCPA 41, C.A.D. 951 (1969) ; *Staalkat of America, Inc. v. United States*, 56 CCPA 86, C.A.D. 959 (1969).

The merchandise in the instant case is not used on the farm by farmers in connection with the growing of sugar beets, but by manufacturers in the production of sugar after the beets have left the farm. Articles or equipment used in manufacturing or processing agricultural products off the farm and by others than farmers or organizations of farmers are not agricultural implements or machines for tariff purposes. *United States v. Spreckels Creameries, Inc., supra; Ohio Butterine Co. v. United States*, 34 Treas. Dec. 465, T.D. 37656 (1918) ; *Eddey Bellefleur v. United States*, 40 Treas. Dec. 441, Abstract 44462 (1921). Therefore, the beet-slicer knives involved herein cannot be classified as knives and cutting blades for agricultural machines under item 649.65.

For the reasons stated the protest will be dismissed as to the claim regarding fraisers and will be overruled as to all other claims. Judgment will be entered accordingly.