(C.D. 4063)

Flex Track Equipment, Ltd.
Border Brokerage Co., Inc. } v. United States

United States Customs Court, Second Division

(Decided August 12, 1970)

*Glad & Tuttle* (*George R. Tuttle, Jr.,* and *Hudson F. Edwards* of counsel) for the plaintiffs.

*William D. Ruckelshaus,* Assistant Attorney General (*Steven R. Sosnov* and *Velta A. Melnbrencis,* trial attorneys), for the defendant.

Before Rao, Ford, and Landis, Judges

Landis, Judge: On February 11, 1965, plaintiffs imported from Canada merchandise invoiced as "10 Rolls Comprising 10–only A213 Arctic Track Treads RN110". The invoice additionally noted that the merchandise was intended as parts for Muskeg motor tracked vehicles. Plaintiffs entered the merchandise at Blaine, Washington, under the tariff classification for parts of tractors, not suitable for agricultural use, TSUS (Tariff Schedules of the United States) item 692.35, dutiable at 11.5 per centum ad valorem.

In its review and liquidation of the entry, customs at Blaine classified the merchandise as belting for machinery, dutiable at 16 per centum ad valorem, under TSUS item 358.10.[1]

Plaintiffs protested the customs classification (19 U.S.C., section 1514), and claimed the merchandise should be assessed with duty under one or the other of several tariff classifications identified as TSUS items 692.27; 692.25; 773.35 and 692.30. Customs denied those protest claims and the protest is here to determine the proper classification of the imported merchandise as provided by law. 19 U.S.C., section 1515.

Plaintiffs in this court limit their protest to the claim for classification under TSUS item 692.25.[2] The claims under TSUS items 773.35 [3] and 692.30 [4] are deemed abandoned and will be dismissed.

The tariff classifications brought before us provide, in pertinent part, as follows:

Classified:

Schedule 3, part 4, subpart C:

Belting and belts, for machinery:
Of vegetable fibers, or of such fibers and
rubber or plastics:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

| | | |
|---|---|---|
| 358.10 | In part of rubber or plastics_____ | 16% ad val. |

Claimed:

Schedule 6, part 6, subpart B:

Motor vehicles (except motorcycles) for the
transport of persons or articles:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Motor vehicles specially constructed and
equipped to perform special services or
functions, such as, but not limited to, fire
engines, mobile cranes, wreckers, concrete
mixers, and mobile clinics_____ * * *

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

---

[1] Item 358.10 was redesignated item 358.06 by section 19 of the Technical Amendments Act of 1965, Public Law 89–241, effective December 7, 1965 (T.D. 56511).

[2] Item 692.25 was redesignated item 692.27 by section 405(a) of the Automotive Products Trade Act of 1965, Public Law 89–283, effective December 20, 1965 (T.D. 56540). We refer to the item by its designation effective on the date of entry, viz, item 692.25.

[3] TSUS item 773.35 classifies belting for machinery, of rubber or plastics, and not containing vegetable fibers.

[4] TSUS item 692.30 classifies tractors suitable for agricultural use, and parts thereof.

Chassis, bodies (including cabs), and parts
of the foregoing motor vehicles:

\*     \*     \*     \*     \*     \*     \*

Other:

    \*     \*     \*     \*     \*     \*     \*

692.25            Other _____     8.5% ad val.

On this record, we conclude that the imported merchandise is designed and used to function as more than belting for machinery and sustain the protest claim under TSUS item 692.25.

Two witnesses testified for plaintiffs. In addition the following documentary evidence was introduced, viz: Samples illustrative of the merchandise imported, except for their length (exhibits 1 and 3); a brochure put out by plaintiffs, with a picture and diagram of how the imported merchandise is used on a crawler tracked motor vehicle (exhibit 2); and two letters written by Mr. Geoffrey C. Agassiz, one of the witnesses, referring to the imported merchandise as "track treads or belts" (exhibits A and B).

The facts, established by the testimony and exhibits, we next summarize, are undisputed. The material from which the imported merchandise was processed in Canada was made by a rubber company following plaintiffs' specifications for a "low temperature stock because most of the machines are going into arctic areas." (R. 13.) We measure exhibit 1, the sample in evidence, to be about five-eighths of an inch thick. The core of exhibit 1, a woven ply vegetable fiber, is covered with rubber. The material was ordered in a 15-inch width for use with plaintiffs' Nodwell RN110 and 75 tracked vehicles. Similar material was also ordered in other widths, depending on the weight and size of the vehicle for which intended.

When the material is received in Canada from the rubber company, it is processed to fit a particular size tracked vehicle. In this case, the material was cut in Canada to specific lengths, either 33 feet and 3 inches or 33 feet and 6 inches (the witness was not sure which, but knew it was a specified length), and $\frac{9}{16}$-inch holes were punched throughout the width and length of the cut belting. The holes are evenly spaced, $4\frac{5}{16}$ inches apart, three across the width, in three rows of 82 holes throughout the length. (R. 15.) The merchandise (hereinafter referred to as articles), as imported, was in the condition cut to specific length and with holes punched as described. The length, number and spacing of the holes, all of which may vary according to the size vehicle for which intended, fit the imported articles for use on a Nodwell RN110 motor vehicle like that pictured in exhibit 2.

The Nodwell RN110 pictured in exhibit 2 looks to be a large heavyweight specially constructed motor driven vehicle. It features a cab

for the driver and his instruments. The cab stands mounted high on the front end of the vehicle which appears to have four inside and four outside ground level wheels on each side. At the rear of the vehicle, on each side, there is a drive sprocket (a wheel with teeth to engage links as on a bicycle). The drive sprocket is off the ground, to the rear of the eight ground wheels, so that it sits center between the inside and outside ground level wheels. An off ground turning wheel is similiarly situated at the front end of the vehicle. Laced around the front turning wheel, rear drive sprocket, and the inside and outside ground wheels, on each side of the vehicle, are crawler treads or tracks assembled, in part, from the imported articles.

It takes two of the approximately 33-foot imported flexible lengths, punched with holes, to make one track assembly, plus 164 backing plates, 492 track bolts and nuts, and 82 grouser bars (cleats on a tractor wheel or track for increasing traction, Webster's Third New International Dictionary, 1968 edition). (R. 11.) The track is assembled in the following manner described by Mr. Agassiz:

> To assemble the track it would be necessary to lay two belts out on a surface, a flat surface, whether the ground or an assembly table, and putting, inserting the backing plate underneath the track tread or belt and placing the grouser bar on top of the track tread or belt and then inserting the bolts through each one of the three holes in each track tread and tightening same. Then, to install the track assembly on the tracked vehicle it would be a matter of turning the whole assembly over, rolling the track vehicle onto the track assembly, and then manhandling the track into position and making, finally—pulling the track together finally with a track mounting tool or a comealong. And the track then is spliced together with the use of an overlap splice by overlapping three holes and bolting through with a longer bolt, bolting through a backing plate, belt, and grouser bar. [R. 11–12.]

The steel grouser bar, bolted to the imported articles, hereinafter also called treads (exhibit 3 shows the impression of the grouser bars and backplates), spans the width of both treads and bridges the space between the two treads. The grouser bars are the connection that holds the two treads together and the bars are calibrated by the holes in each tread to engage at center (where the bar bridges the space between the treads), with the pitch of the drive sprocket at the rear of the vehicle. The grouser bars also pass around the front turning wheel, and give the track motion as the vehicle moves with one tread of the assembly passing around the inside wheels and other tread passing around the outside wheels on each side of the vehicle. The imported articles thus give flesh and body to a skeleton outlined by the grouser bars, backplates, bolts, and nuts in an assembled crawler track.

Nodwell RN110's are off highway motor vehicles designed to an extremely low ground pressure to move over soft marshy ground and snow. Neither of the witnesses knew of any other purpose or use for the imported articles, in the condition imported (other than one that might be improvised), than to flesh out the track assembly described above. Mr. Agassiz acknowledged that he referred to the material from which the imported merchandise was processed as belting or tread (R. 20), and that the imported merchandise is sold as "belts", "track treads", or "track belts". (R. 24, 25.)

The briefs on both sides argue the obvious questions, viz, is or is not the imported article belting for machinery? Is or is not the imported article a "part" of a motor vehicle? If the imported article is both, does or does not the TSUS provision belting for machinery describe the "part" under the controlling classification rule that:

> * * * a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, *but does not prevail over a specific provision for such part.* [TSUS General Headnotes and Rules of Interpretation, 10 (ij), emphasis added.]

Although plaintiffs contend to the contrary, citing *F. W. Myers & Company, Inc.* v. *United States*, 60 Cust. Ct. 633, C.D. 3480 (1968), defendant's argument, to the effect that if the imported articles are belting for machinery and parts of motor vehicles, then the tariff classification belting for machinery describes the "part" sufficiently to prevail over the provision for such "part", is supported by later and more considered authority. *Great Western Sugar Co., Railway Express Agency, Inc.* v. *United States*, 64 Cust. Ct. 127, C.D. 3971 (1970), appeal pending; *West Coast Glass Distributors* v. *United States*, 62 Cust. Ct. 444, C.D. 3797, 298 F. Supp. 1188 (1969). As suggested earlier, however, we are of the opinion that the imported articles, designed as they are for a special purpose, are more than belting for machinery within the commonly accepted meaning of that term. *United States* v. *The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794 (1962).

All tariff acts, starting with the 1909 Act, have included a tariff provision classifying belting for machinery (paragraph 913(a), Tariff Act of 1930). TSUS item 358.10 is a carryover of the same provision without change or relevant discussion. (Tariff Classification Study, Schedule 3, page 139.) "From this it would seem obvious that the term was intended to have the same meaning under the tariff schedules as under the prior act[s]." *Dollar Trading Corp.* v. *United States*, 64 Cust. Ct. 153, C.D. 3975 (1970). In what little litigation there has been involving classification or claim under the tariff provision belting for machinery, the term has been judicially construed, consistent with the commonly defined meaning (Funk & Wagnalls Standard Dictionary,

International Edition (1963)), as a flexible kind of material passing over two or more wheels to transmit power in machinery, and serving to communicate motion from one part to another or, as a conveyor of sorts. *United States* v. *Horrax*, 1 Ct. Cust. Appls. 142, T.D. 31187 (1911) ; *United States* v. *Pitt & Scott (Ltd.)*, 3 Ct. Cust. Appls. 91, T.D. 32358 (1912) ; *J. C. Murray & Co.* v. *United States*, 46 Treas. Dec. 493, T.D. 40540 (1924) ; see also Summaries of Tariff Information (1948), Volume 9, page 129.

Defendant argues, *inter alia*, that the imported articles are used to pass over two or more wheels and transmit motion. Customs must have found that the imported articles are so used. That finding is presumptively correct. *Leonard Levin Co.* v. *United States*, 27 CCPA 101, C.A.D. 69 (1939). While we find no evidence to overcome that presumption, the record nevertheless supports the fact that the imported articles are specially designed to do much more than transmit motion when used on the motor vehicle machinery. There is also the consideration that in the specially designed condition imported, the articles are shown to have no legitimate function on machinery, except to be assembled with other parts to make a crawler track or tread for machinery. The imported articles incidentally serve, when assembled into a crawler track and installed on the Nodwell RN110, to transmit motion. Whether that is enough to support the customs classification, we need not decide. For it is clear to us that the imported articles are designed and processed to incorporate features that permit the imported articles to serve multiple functions which, in sum, characterize the particular article more than any single feature or function. Perhaps the most significant feature is the punched holes, evenly spaced, to receive grouser bars and other parts incident to assembly of a crawler track. When assembled with the other parts, the imported articles incidentally function not only to transmit motion, as customs found, but to also give the motor vehicle support, traction, and stability. All those functions are equally necessary for the motor vehicle to pass over soft marshy ground and snow as intended. The imported articles having been specially designed to do more than simply transmit motion, they are not classifiable as belting for machinery. "[A]n item which is *more than* a certain article [belting for machinery] cannot fall within the * * * [tariff] provision for that article." *United States* v. *The A. W. Fenton Company, Inc.*, *supra*, at page 47 [emphasis quoted].

This brings us to defendant's final contention that the imported articles are not parts for a motor vehicle even if the track assembly into which they are used "might be considered a part of the Nodwell vehicle." (Defendant's brief, page 14.) Assessing the facts logically, in the condition imported, the imported articles, with the holes

punched, are parts dedicated to be used in assembling a crawler track and the track assembly is intended as a part for the motor vehicle. The track assembly is chiefly used on Nodwell RN110's and similar vehicles. It is essential to the function of the Nodwell RN110, and the vehicle cannot function. as intended without it. *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602 (1955). For the reasons we have already stated, the track assembly is itself more than a transmission belt. Since the assembled track is a "part" for a motor vehicle, and the imported articles are "parts" for the assembled track, it follows that the imported articles are "parts" for motor vehicles under the judicial principle that "a part [imported articles] of a part [assembled track] of a main article [motor vehicle] is a part of the main article." *Gallagher & Ascher Company* v. *United States*, 63 Cust. Ct. 223, C.D. 3899 (1969); compare, *Deere & Company* v. *United States*, 64 Cust. Ct. 308, C.D. 3996 (1970).

The protest claim under TSUS item 692.25 is sustained. All other claims are dismissed.

Judgment will be entered accordingly.