**BORDER BROKERAGE COMPANY, INC.**

v.

**UNITED STATES.**

C.D. 4756; Court No. 70/35163–29794.

United States Customs Court.

July 20, 1978.

Glad, Tuttle & White, Los Angeles, Cal. (Steven W. Baker, Los Angeles, Cal., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (William F. Atkin, Trial Atty., New York City), for defendant.

Lamb & Lerch, New York City (Richard J. Kaplan and David R. Ostheimer, New York City, of counsel), as amicus curiae.

RICHARDSON, Judge:

The merchandise in this case consists of certain rubber track tread material made in Canada specifically for use on a Muskeg-type motor vehicle identified as a Nodwell RN–110. The track tread, in its condition as imported, is cut to length and perforated with holes in a specific pattern. After importation, the track tread is assembled with grouser bars, back plates, and nuts and bolts, to make a crawler tread which is then attached to the motor vehicle.

Similar merchandise was before the court in *Flex Track Equipment, Ltd. v. United States*, 65 Cust.Ct. 119, C.D. 4063 (1970), aff'd, *United States v. Flex Track Equipment, Ltd.*, 59 CCPA 97, C.A.D. 1046 (1972), wherein the courts held the merchandise to be "more than" "belting or belts, for machinery" as provided for in TSUS item 358.10 (redesignated as item 358.06) as classified in liquidation, and properly classifiable as claimed by the importer as "parts of the foregoing motor vehicles" under TSUS item 692.25 (redesignated as item 692.27). The same issue is raised anew here following the Government's limitation of the holding in C.A.D. 1046 to the entry before the court in that case (see T.D. 72–283).

In the instant case the parties have stipulated that the merchandise is a processed article cut to a specified length from a material of woven ply vegetable fiber and rubber, that the article is 15″ in width and punched with nine 16″ holes evenly spaced 4$^{15}$/$_{16}$″ apart, three across the width, in three rows of either 82 or 67 holes each throughout the length, that the merchandise was, and similar merchandise is, ordinarily produced in accordance with standardized specifications, and, as previously indicated, that the imported merchandise is similar in all material respects to the merchandise the subject of decision in C.D. 4063 and C.A.D. 1046. Plaintiff rests its case on the record in the *Flex Track* case which was incorporated into the record in the instant case, and moves for judgment in its favor under the doctrine of *stare decisis*. Defendant opposes the motion on the basis of what it contends is "new evidence" by means of which it seeks to avoid application of the doctrine of *stare decisis*.

Defendant's "new evidence" consists of the testimony of two industry witnesses and numerous samples of flat belting, together with some documentary exhibits. The testimony of the witnesses is directed toward three types of flat belting, i. e., conveyor belting for moving bulk materials, elevator belting for lifting bulk materials in a vertical direction, and transmission belting for transmitting power from a flat-faced pulley to another flat-faced pulley, general agreement with various definitions of the terms "belting" and "belts", identification of examples of conveyor and elevator belting which are punched with holes or equipped with cleats or ribs for particular applications, and personal appraisals of the imported merchandise as identifying either with a transmission-type belt or an elevator-type belt.

Directing his attention to the imported merchandise, the witness Raymond G. Moore, product manager of the flat belting division of B. F. Goodrich, testified on cross-examination (R. 74):

Q. Mr. Moore, regarding the imported merchandise, you stated your belief that you would term this to be a piece cut from a belt, is that correct?—A. Yes.

Q. What kind of a belt would you consider this? Would you consider it a conveyor belt?—A. I would now consider it as a track belt.

And in the same vein, the witness David Wiese, a "technical man" for Goodyear Tire and Rubber Company, testified on cross-examination (R. 131):

Q. You were here in court this morning?—A. Yes.

Q. And you heard the description that this is assembled together, two pieces 33 feet long, side by side, assembled with grouser bars, bolts, and plates. We have two individual pieces connected together with metal bands. Would you consider that a complete track tread assembly? Would you consider that either a belt or belting?—A. I would consider it belting, yes. A belt, rather, if it is on a machine. A belt.

Neither of these witnesses testified as to any personal knowledge of or experience with the use of the imported material on the type of motor vehicle machinery for which it was intended.

In *Flex Track* the trial court called attention to the testimony of one of two witnesses who testified in the case. The court noted (p. 123):

"Mr. Agassiz acknowledged that he referred to the material from which the imported merchandise was processed as belting or tread (R. 20), and that the imported merchandise is sold as 'belts', 'track treads', or 'track belts'. (R. 24, 25.)"

And earlier in the opinion the court had referred to two letters (exhibits A and B) authored by the same witness in which he had referred to the imported merchandise as "track treads or belts". Notwithstanding this evidence the court went on in *Flex Track* to hold "that the imported articles, designed as they are for a special purpose, are more than belting for machinery within the commonly accepted meaning of that term". The court pointed out that the common meaning of the term belting for ma-

chinery is defined as "a flexible kind of material passing over two or more wheels to transmit power in machinery", "serving to communicate motion from one part to another" and "a conveyor of sorts". The court noted that the imported merchandise was specially designed to do much more than transmit motion when used on motor vehicle machinery, i. e., to give the motor vehicle support, traction, and stability.

These findings were affirmed on appeal. Our appellate court said (p. 100), "We agree with the court that the imported articles were designed and processed to incorporate features that serve multiple functions which, in the language of that court, 'in sum, characterize the particular article more than any single feature or function.'"

In resisting plaintiff's motion for application of the rule of *stare decisis,* made at the conclusion of plaintiff's case, defendant argues, among other things (brief, p. 20), "Mr. Agassiz, plaintiff's first witness in *Flex Track* had no expertise as to the commercial use of the terms 'belts' and/or 'belting.' In fact, no testimony was elicited from Mr. Agassiz as to the commercial meanings of those terms."

The court finds the rule of *stare decisis* to be applicable here, and, accordingly, sustains plaintiff's motion for judgment. In the court's opinion defendant's "new evidence" is *cumulative.* Contrary to defendant's argument, the testimony of the witness Agassiz in *Flex Track* to which the trial court called attention as aforesaid had a bearing on the *commercial meaning* of the terms "belting" and "belts", and as such, the record in that case cannot be said to be devoid of such evidence. In fact, the Agassiz testimony may properly be said to be more *qualitative* on the subject of commercial meaning than that tendered by defendant's witnesses in the instant case, in view of the fact that it was related to the mode of buying and selling of the imported merchandise and the testimony of defendant's witnesses is not so related. The testimony of these witnesses (like the numerous exhibits introduced into the instant record) relates to conventional forms of belting and

belts with which the witnesses are familiar, and on the basis of which, they gave opinions concerning the imported merchandise. However, these opinions were in conflict insofar as concerns the comparative relationship between the imported material and various conventional forms of belting. Consequently, in the court's view it was never established through the "new evidence" that the imported material is in fact any one of these conventional forms of belting.

 It is well settled that *cumulative* and *conflicting* evidence will not suffice to avoid application of the rule of *stare decisis. United States v. Dodge & Olcott, Inc.,* 47 CCPA 100, 103, C.A.D. 737 (1960); *John C. Rogers & Co., Inc. v. United States,* 63 CCPA 10, 11 C.A.D. 1158 (1975). And in the absence of a clear and convincing showing of error in the instant record application of this doctrine here is salutary.

Judgment will be entered herein for the plaintiff accordingly.